ROCKLAND SAVINGS BANK

*vs.*

WILLIAM G. ALDEN, AND JOSEPH E. MOORE, Trustee.

Knox.    Opinion November 26, 1907.

*Trustee Process.    Same not maintainable against Trustee in Bankruptcy Proceedings.*
*United States Bankruptcy Court.    Jurisdiction.    Bankruptcy Rule XXIX.*
*United States Bankruptcy Act, 1898, section 47, clauses 3, 4.*

In a trustee process in which the plaintiff sought to hold certain ·dividends
declared by the referee in bankruptcy in favor of the principal defendant
Alden, it appeared from the trustee's disclosure that among the claims
against the bankrupt estate allowed by the referee were notes in favor of
the defendant Alden amounting to $7000 and a preferred claim in his favor
for $300. On these claims the referee declared dividends aggregating
$2190 for which checks were drawn at different times by the trustee and
countersigned by the referee and payable to the defendant Alden; but by
reason of the service of the trustee process upon the defendant Moore
as trustee in bankruptcy, these checks were not delivered to the payee
therein named but were retained in possession of the trustee. The funds
belonging to the estate against which these checks were drawn, remained
in the Camden National Bank in which they were deposited by the trustee.

*Held :* (1) That in such a case the jurisdiction of the United States bank-
ruptcy court does not cease but that the funds of a bankrupt estate con-
tinue·in the custody of the law until the trustee in bankruptcy actually
pays to the distributees the dividends awarded them. (2) That the
established rule exempting money in the custody of the law from trustee
process is applicable to the funds of a bankrupt estate in the hands of
the trustee in bankruptcy under the circumstances stated.

There is an obvious distinction between the effect upon the jurisdiction of
the court of bankruptcy of a voluntary assignment of a dividend by a dis-
tributee to his creditor, and an attempt on the part of such creditor to
reach the dividend by a process of foreign attachment in the State court.
In the former case the assignee of the dividend may upon petition be
allowed to intervene and have the validity of his assignment and the
justice of his claim determined by the court of bankruptcy in which the
matter is pending. He does not thereby usurp.the paramount authority
of the Federal court. He does not in anyway interfere with its exclusive
jurisdiction. By intervening he voluntarily submits to its authority. On

the other hand the creditor of the distributee invokes the trustee process of a State court, which in effect commands the trustee of a court having exclusive jurisdiction of the matter, not to pay over the dividend, but to await the judgment of the State court. Thus it would essentially interfere with the exercise of the paramount Federal authority and obstruct the orderly administration of the bankrupt estate.

On report. Trustee discharged.

Trustee process in which the plaintiff sought to hold certain dividends declared by the referee in bankruptcy in favor of the principal defendant, William G. Alden. The said principal defendant, was duly defaulted.

The facts appear in the trustee's disclosure which, omitting caption, is as follows:

"And now the said Joseph E. Moore comes and defends and says that he ought not to be adjudged the trustee of said defendant in this action because he says that at the time of the service of the writ in this case upon him, to wit, on the nineteenth day of September A. D. 1905, he had not in his hands and possession any goods, effects or credits of the said defendant, unless it shall appear from the following statement of facts which the trustee hereby submits:

"On September 3, 1904, the Megunticook Woolen Co. of Camden, Knox County, Maine, was petitioned into bankruptcy and on September 20, 1904 was adjudged a bankrupt and at the first meeting of the creditors October 19, 1904, I was appointed trustee in bankruptcy of said Woolen Co. under the U. S. bankruptcy law, and duly qualified and proceeded to act in closing up said Woolen Co.'s affairs under the provision of that law and converted the assets of the company into cash by due proceedings had under the direction of the U. S. Dist. Court.

"Lewis F. Starrett of Rockland, Maine, was a referee in bankruptcy to whom said case in bankruptcy was referred and he acted in the proceedings.

"A large number of claims were proved before, and allowed by, said referee and among them a general claim on notes in favor of the defendant W. G. Alden for the sum of seven thousand dollars ($7000) and a preferred claim in his favor for three hundred dollars ($300) as certified to me by said referee.

"The property of said Woolen Co. was sold and turned into cash, December 29, 1904, out of which I paid the bills, incurred by me in running said plant under orders of court, and the balance I retained for expenses and fees to be allowed the trustee and parties, and for distribution among creditors whose claims had been allowed; and all of which was cash in my hands.

"After due proceedings, said referee on the 18th day of July, A. D. 1905, declared the first dividend or distribution of twenty per cent, on claims proved and allowed against said company and certified the same to me on that day. He declared a dividend or distribution amounting to fourteen hundred dollars ($1400) on the said claim of seven thousand dollars of W. G. Alden. He made no declaration of dividend or order of payment on the said three hundred dollars ($300) preferred claim of said Alden.

"On July 26, 1905, the Rockland Savings Bank brought suit and on same day served a trustee process upon me. On July 28, 1905, I drew checks in payment of said dividends and distribution which were countersigned by Lewis F. Starrett, referee, and sent them out, except I retained the one payable to said Alden, on account of said trustee process.

"On Sept. 19, 1905, I was notified that the said suit of Rockland Savings Bank against said Alden had been discontinued and not entered in court on that day, and at eight o'clock and forty-five minutes in the afternoon on said Sept. 19, 1905, a trustee process of said Rockland Savings Bank against W. G. Alden was served upon me, said amount due said Alden from me as trustee of said Megunticook Woolen Co. then being in my hands.

"That on Dec. 16, 1905, I made a report to the court that after paying said first dividend and fees and expenses as allowed by the court, there was still in my hands for distribution among creditors the sum of $7,196.27.

"On January 20, 1906, at ten o'clock in the forenoon there was a meeting of creditors and a dividend and decree of distribution of the whole of said balance, being 7 per cent on the indebtedness proved and allowed. The amount of the dividend or distribution to W. G. Alden was four hundred and ninety dollars ($490) on the

general claim of seven thousand dollars ($7000), and also the pre-
ferred claim of three hundred dollars for which I drew checks
January 29, 1906, which were countersigned by Lewis F. Starrett,
referee, one check for four hundred and ninety dollars, and a
separate check for three hundred dollars, but I did not deliver said
checks to said Alden.

"On January 20, 1906, at ten o'clock and thirty minutes in the
forenoon ; January 29, 1906, at nine o'clock and thirty minutes in
the forenoon, and February 10, 1906, at nine o'clock and thirty
minutes in the forenoon, a trustee writ of Rockland National Bank
against W. G. Alden was served on me as trustee of said Alden, at
the three several dates named.

"I then and still hold the funds as named, not having delivered
any check to said Alden.   No other trustee process has been served
on me.

"The Camden National Bank was not named by the U. S. Court
as a Bank of deposit for funds in hands of Trustees of Estates in
bankruptcy, nor was there any bank so named in the jurisdiction of
L. F. Starrett, referee, during the time I was trustee and held the
funds as named in this disclosure.   The Megunticook Woolen
Company had kept its deposit in the Camden National Bank and
I continued in the same bank on my own motion.   The amount
in my hands retained from first dividend made no part of the
$7,196.27 reported by me as the amount in my hands for final dis-
tribution.   The first dividend was treated as paid.

"I annex copies of the checks issued by me payable to said Alden
named in the disclosure.

"I respectfully submit whether I am liable to be charged for any
sum in either suit and if so for how much ?

"Joseph E. Moore."

This disclosure was duly sworn to by the said Joseph E. Moore
before a justice of the peace.   The copies of the checks mentioned
in the disclosure are omitted in this report.

The cause came on for hearing at the September term, 1906, of
the Supreme Judicial Court, Knox County, and by agreement of

the parties, the case was "reported to the Law Court, for the Law Court to decide the question of the liability of the trustee upon the trustee's disclosure."

*Rodney I. Thompson,* for plaintiff.

*Arthur S. Littlefield,* for trustee.

*S. T. Kimball,* for Rockland National Bank.

SITTING: EMERY, C. J., WHITEHOUSE, STROUT, PEABODY, SPEAR, CORNISH, JJ.

WHITEHOUSE, J. This is a trustee process in which the plaintiff seeks to hold certain dividends declared by the referee in bankruptcy in favor of the principal defendant Alden.

September 20, 1904, the Megunticook Woolen Company of Camden was adjudged bankrupt by the U. S. District Court and the defendant Moore was appointed its trustee in bankruptcy. Among the claims against the estate allowed by the referee were notes in favor of the defendant Alden amounting to $7000 and a preferred claim in his favor for $300. On these claims the referee declared dividends aggregating $2190, for which checks were drawn at different times by the trustee and countersigned by the referee payable to the defendant Alden; but by reason of the service of this trustee process upon the defendant Moore, as trustee in bankruptcy, these checks were not delivered to the payee therein named but were retained in the possession of the trustee. The funds belonging to the estate against which these checks were drawn, remain in the Camden National Bank in which they were deposited by the trustee.

It is provided in section 47 of the bankrupt law that trustees in bankruptcy shall (3) "deposit all money received by them in one of the designated depositories," and while it appears from the disclosure of the trustee that no bank in the jurisdiction of the referee in this case was designated by the United States court as a bank of deposit for funds of bankrupt estates, the Camden National Bank was in fact the depository which was selected by the trustee with the acquiescence of the court for the deposit of all funds belonging to the bankrupt estate in question.

The fourth clause of section 47 declares that trustees shall "draw money only by check or draft on the depositories in which it has been deposited," and it is prescribed by Rule 29 of the Supreme Court of the United States that "no moneys deposited as required by the act shall be drawn from the depository unless by check or warrant signed by the clerk of the court or by a trustee and countersigned by the judge of the court or by a referee designated for that purpose."

In view of these regulations it is suggested in behalf of the defendants that after the fund in question had been deposited in the Camden National Bank, it ceased to be under the personal control of the trustee; that although checks were drawn by the trustee and countersigned by the referee, no one except the payee named in those checks, was empowered, in the ordinary course of bankruptcy proceedings, to draw the money called for by the checks. It is said that inasmuch as the money in the bank is not under the personal control of the trustee, and this court has no authority over the judge or referee of the United States court, the defendant Moore, if charged as trustee in this proceeding, would be powerless to obtain the money with which to meet the judgment against him. It is accordingly contended that under such circumstances, the funds, even after dividends are declared, are still in the custody of the law until they are actually received by the party entitled thereto, by virtue of an order properly issued.

Thus the question now presented for the determination of the court is whether a trustee in bankruptcy under the circumstances disclosed by the foregoing statement of facts, is liable to this trustee process issuing from a State court.

But inasmuch as it is uniformly held by all courts that, in the absence of special statutory provisions to the contrary, money which is properly said to be in custodia legis cannot be reached by the process of foreign attachment, the question more specifically stated, is whether a fund in the situation existing at the time of the service of the process in this case, is still in the custody of the law, or whether after distribution is ordered and the checks are drawn and countersigned but not delivered, the money has ceased to be in the

possession of the court or in the custody of the law. The plaintiff contends that the final order for distribution had been given by the United States court, that the purpose of the legal custody had been accomplished, that nothing further remained to be done by that court, and that the money cannot now be properly considered as in the custody of the law.

The decisions in the Federal courts have uniformly recognized the doctrine that funds thus situated belonging to a bankrupt estate are in the custody of the law and not amenable to process of foreign attachment against the trustee in bankruptcy.

In re Cunningham, (1879) 6 Fed. Cases, 958 (No. 3478) the facts respecting the condition of the fund were substantially the same as in the case at bar. The dividend had been declared and distribution ordered, but before payment was made, a process of foreign attachment issuing from the State court was instituted in favor of a plaintiff to whom one of the dividend creditors of the bankrupt estate was indebted, and served on the "assignee" (trustee) in bankruptcy. In that suit judgment was entered in the State court against the principal defendant, the dividend creditor, and against the assignee in bankruptcy as garnishee for the amount of the dividend. A petition was thereupon presented to the United States court by the plaintiff in that proceeding asking that the assignee in bankruptcy be directed to pay the amount of the dividend to him. Subsequently the original creditor of the bankrupt estate made a voluntary assignment of the dividend declared in his favor, to a third party who, upon petition, was allowed to intervene for the purpose of having his rights determined in the United States court. It was held in a carefully considered and exhaustive opinion that the rule exempting money in the custody of the law from the process of foreign attachment was applicable to the funds of a bankrupt estate in the hands of the assignee in bankruptcy under the circumstances stated, and that the intervening party who had received an assignment of the dividend after the service of the trustee process upon the assignee in bankruptcy, was entitled to have the dividend paid to him. In the opinion the court says, inter alia : "The State court has no authority to bring an assignee

before it who is acting under the orders of the United States court; *Atkins* v. *Stradley* (Iowa) 1 N. W. 609. The true doctrine is that, when property or money is in custodia legis, the officer holding it is the mere hand of the court; his possession is the possession of the court; to interfere with his possession is to invade the jurisdiction of the court itself; and an officer so situated is bound by the orders and judgments of the court whose mere agent he is, and he can make no disposition of it without the consent of his own court, expressed or implied. How can such an officer when garnisheed, know what answer he can make with safety to himself, in advance of the orders and judgments of the court having possession of the property and jurisdiction of his person? How could such an officer so expose himself by his answer as garnishee to the danger of a personal judgment in some other court, before the determination of the court having control of him and the property? It cannot for a moment be doubted that the court of bankruptcy has exclusive jurisdiction of the bankrupt's estate, and of its administration from the time of the adjudication to the final discharge of the estate, and the discharge of the assignee. This jurisdiction, does not, by any means, cease with the order of distribution. It is clearly within the power of the court, and its duty, to see that its assignee pays over to the distributees the dividends awarded to them. The assignee failing to perform this duty, the court will punish him for contempt; order a suit upon his official bond, and refuse to give him a final discharge. This jurisdiction is exclusive. No other court can touch, or bind the assets of the bankrupt, or authorize any suit against the assignee, who is the officer of the court. It follows that any action in any other tribunal, aiming to control the action of the assignee, or directly or indirectly to compel the assignee to dispose of the assets or pay over money in his hands belonging to the estate, must be utterly without jurisdiction, and therefore null and void."

It will be observed that this decision clearly determines that the jurisdiction of the United States court does not cease, and that the funds of the estate continue in the custody of the law until the trustee in bankruptcy actually pays to the distributees the dividends

awarded them. It also forcibly illustrates the distinction between the effect upon the jurisdiction of the court of bankruptcy, of a voluntary assignment of a dividend by a distributee to his creditor, and an attempt on the part of such a creditor to reach the dividend by a process of foreign attachment in the State court. In the former case the assignee of the dividend may upon petition be allowed to intervene and have the validity of his assignment and the justice of his claim determined by the court of bankruptcy in which the matter is pending. He does not thereby usurp the paramount authority of the Federal court. He does not in any way interfere with its exclusive jurisdiction. By intervening he voluntarily submits to its authority. On the other hand the creditor of the distributee invokes the trustee process of a State court, which in effect commands the trustee of a court having exclusive jurisdiction of the matter, not to pay over the dividend, but to await the judgment of the State court. Thus it would essentially interfere with the exercise of the paramount Federal authority and obstruct the orderly administration of the bankrupt estate.

In *Gilbert* v. *Quimby*, 1 Fed. Rep. 113, the dividend had also been declared when the process of foreign attachment was invoked and a State officer assumed to attach the dividend in the hands of the assignee in bankruptcy. In the opinion the court says: "That the dividend was not attachable on process from the State courts would seem to be quite clear. While in the hands of the assignee it would be a part of the estate of the bankrupt in the custody of the court. It would not be held the property of the debtor, but would only be property that would become his when he should get it."

It will be perceived that this is also direct authority in support of the proposition that an estate in bankruptcy is deemed to be in the custody of the Federal court until the distribution is effected by the actual payment of the dividends to the creditors to whom they are awarded or their assignees.

In re Bridgman, Vol. 4 of Fed. Cases, (No. 1867) the situation was substantially the same as in the last named cases, and it was held that the regular distribution of the estate by the court of

bankruptcy could not be obstructed or delayed by any process from a State court. The following statement of opinion by the register was approved and adopted by the court: "The simple question in this case is, whose warrant or summons shall the assignee obey? That of the United States District Court in bankruptcy, ordering him to pay this money to the creditor of the bankrupt, or that of the Superior Court of Randolph County, Georgia, summoning him to answer to that court as to the money in his hands of the said creditor? The answer is plain. The distribution of the assets of the bankrupt, which is essential to the due execution of the provisions of the bankrupt act, cannot be stayed or prevented by the process of a state court." See also In re Kohlsaat No. 7918, Fed. Cases; Chisholm et als. Bankrupts, 4 Fed. Rep. 526; *Clark* v. *Shaw*, 28 Fed. Rep. 356; In re Tune 115 Fed. Rep. 916. See also *Buchanan* v. *Alexander*, 4 How. (U. S.) 20.

The doctrine established by the Federal cases is also supported by the great weight of authority in the State courts relating to funds in the hands of assignees of insolvent estates, in the custody of receivers, and analogous cases. *Colby* v. *Coates*, 6 Cush. 558; *Columbian Book Co.* v. *De Golyer*, 115 Mass. 67; *Com.* v. *Hide and Leather Ins. Co.*, 119 Mass. 155; *Voorhees* v. *Sessions*, 34 Mich. 99; *People ex rel. Tremper* v. *Brooks*, 40 Mich. 333; *McGowen* v. *Myers*, 66 Iowa, 99.

Numerous decisions may be found in the State courts holding that funds in the hands of executors and administrators are subject to the trustee process; but it will be found that they are controlled by special statutory provisions, or influenced by considerations not applicable to the case at bar.

It is accordingly the opinion of the court that the entry must be,

*Trustee discharged.*