HARVEY S. COLLINS *vs.* BYRON M. LEWIS.

First Judicial District, Hartford, March Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued March 4th—decided March 31st, 1930.

*Elbert L. Darbie,* for the appellant (defendant).

*John B. Harvey,* for the appellee (plaintiff).

HAINES, J.  The uncontested finding of facts shows that the plaintiff—a deputy sheriff—on July 14th, 1928, served three writs on Charles Kinne of South Coventry, and attached ten cows which he found in the possession of Kinne; and removed them to the farm of Thomas Welles, a short distance from Kinne's home, where the plaintiff kept them a few days and then removed them to the farm of Archie Berkowitz in the town of Columbia.  The plaintiff made a return of one of the writs but the other two were not returned to court.  The day after the service of the writ, the plaintiff, for the first time learned that the cows were the property of the defendant Lewis and that Kinne had the possession of them at the time of the attachment under a conditional sale contract with Lewis, which was on record in the town clerk's office at Coventry.  On July 17th—three days after the attachment of the cows—the wife of the defendant Lewis, informed the plaintiff by telephone of the conditional bill of sale and of the amount due thereon. At this or one other conversation by telephone the plaintiff offered to return the cows either to Kinne or to the defendant Lewis, but was informed that the former was leaving his place and would not take them and that the defendant Lewis would not take them "at that time."  A few days later the plaintiff took the cows to Kinne's place but he refused them and the landlady refused to have them on the place.  The plaintiff returned the cows to Berkowitz's place and

later telephoned to Lewis and offered to deliver them to the latter's farm in East Killingly but was told there was no place for them there "at that time." The following day—July 18th—the plaintiff through his attorney, notified Lewis by letter, that he was holding the cows for Lewis, and would look to him for the cost of their keep. Late in August Lewis went with the plaintiff to look at the cows and told the plaintiff he was going to sell them. Two or three days afterward Lewis sold the cows and they were removed by an agent of the purchaser, Lewis signing a receipt for them and delivering it to the plaintiff. The cows had been boarded at the Berkowitz farm for thirty-eight days and a reasonable charge therefor was $190. The plaintiff took for granted that he would be paid by Lewis for the board of the cows but at no time was there any mention made of it by Lewis nor any express agreement between the plaintiff and Lewis in regard to it. The plaintiff was, at all times, ready, able and willing to deliver the cows to Lewis. In the plaintiff's reply to defendant's answer, it is alleged that on July 16th upon the discovery of the conditional bill of sale, the plaintiff "thereupon released the attachment of said cows." In his rejoinder the defendant pleaded no knowledge. The release of the attachment does not appear in the finding as a fact found, but the judgment recites that the issues under the pleadings were found for the plaintiff and there is apparently nothing in the record to the contrary. The plaintiff treats his release as an established fact. Whether this may be done under the authority of Practice Book, p. 299, § 240, *Hatch* v. *Thompson,* 67 Conn. 74, 76, 34 Atl. 770, *Wilson* v. *Cheshire Brass Co.,* 88 Conn. 118, 122, 89 Atl. 903, we do not decide. The trial court reached the conclusion that the cows were lawfully attached; that the plaintiff had done all that

by law he was required to do in trying to return them to Lewis; that there was an implied promise on the part of Lewis to pay their board, and that $190 was a reasonable price therefor. All these conclusions save the last, are contested upon this appeal. Plaintiff's letter was answered by telephone by defendant's attorney, Arthur G. Bill, whose testimony was excluded, and this is assigned as error.

First, as to the validity of the attachment. It is the claim of the defendant that the attachment was a trespass, and in support of that claim he cites *Lester* v. *Ladrigan,* 90 Conn. 570, 98 Atl. 194. In that case a truck was attached as the property of M, but the court found that M "never owned it." In the present case, the vendee, Kinne, under the conditional bill of sale, was the equitable owner of the cows while the legal title was in the vendor, Lewis. This equitable interest of Kinne was an attachable interest and the attachment was properly made by the plaintiff by taking the cows into his possession, and the legality of that action is not affected by any erroneous view the officer may have had as to the extent of Kinne's interest. General Statutes, § 5870; *Mack* v. *Story,* 57 Conn. 407, 18 Atl. 707; *Beach's Appeal,* 58 Conn. 464, 473, 29 Atl. 475; *Pearne* v. *Coyne,* 79 Conn. 570, 65 Atl. 973; *Smith* v. *Gilbert,* 71 Conn. 149, 154, 41 Atl. 284; *Cohen* v. *Schneider,* 70 Conn. 505, 49 Atl. 455.

By this means the creditor obtained a valid attachment of the interest of Kinne as conditional vendee and he held the cows thereafter subject to the rights of the conditional vendor exactly as Kinne had held them before the attachment. So long as the attachment remained in force, the creditor stood in the shoes of the conditional vendee, as regards the vendor. *Cavanaugh* v. *Marble,* 80 Conn. 389, 391, 68 Atl. 863. The attachnment was made and the cows taken by

the plaintiff as deputy sheriff on July 14th. Upon discovering on the 16th that the legal title was not in Kinne, he forthwith tendered the cows to Kinne who refused to receive them. The circumstances show that Kinne thus abandoned his interest in the cows. Abandonment comprehends both the intent to abandon, and the external act by which that intent is carried into effect. *American Brass Co.* v. *Serra,* 104 Conn. 139, 148, 132 Atl. 565; *Stueck* v. *Murphy Co.,* 107 Conn. 656, 662, 142 Atl. 301; *Peck* v. *Lee,* 110 Conn. 374, 377, 148 Atl. 133; *Eads* v. *Brazelton,* 22 Ark. 499, 509; *Judson* v. *Mallory,* 40 Cal. 299. While abandonment is often a question of fact, yet where both requirements are met by facts such as these in this record, we are entitled to hold as matter of law, that the abandonment by Kinne was clearly established. The fact that Kinne had done this was known to Lewis. From that time forth, the only interest in the cows was that of Lewis, and since the plaintiff's tender of the cows to Kinne showed he no longer sought to hold them by attachment, we must treat his possession thereafter as that of an individual only. The defendant Lewis was of course then entitled to receive the immediate possession of the cows from the plaintiff, and the possession was in fact so tendered to him by the plaintiff. He refused to receive them "at that time." Upon a second tender of possession the defendant would not take them because "there was no place for them there at that time." These and the further facts, that the defendant later told the plaintiff that he was going to sell the cows, and two or three days later actually did so and caused their removal from the Berkowitz farm, signing a receipt for them to the plaintiff, showed an unmistakable recognition of his ownership of the cows from the time at least of the first tender. In addition it is to be noted

that during this period he knew from the letter which had been sent to him by counsel for the plaintiff, that the plaintiff was holding the cows for him with the expectation of being paid for their care and keep. By selling the cows and taking possession of them, he thus appropriated the benefit of the thirty-eight days' care and keep which had been bestowed upon them by the plaintiff. It was under these established facts that the trial court held there was an implied contract created by law, that the defendant would pay the plaintiff.

A true implied contract can only exist where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words. Such a contract arises where a plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefor, and the defendant, knowing such circumstances, avails himself of the benefit of those services. In such a case, the law implies from the circumstances, a promise by the defendant to pay the plaintiff what those services are reasonably worth. *Weinhouse* v. *Cronin,* 68 Conn. 250, 252, 253, 36 Atl. 45; *Bartlett* v. *Raidart,* 107 Conn. 691, 695, 142 Atl. 398; *Santoro* v. *Mack,* 108 Conn. 683, 695, 145 Atl. 273; *Summa* v. *Dereskiawicz,* 82 Conn. 547, 549, 74 Atl. 906. "One may . . . be required to compensate another for the benefits conferred by the other's labor and services, either accepted by or necessarily accruing to the beneficiary, when, having reasonable ground to believe that the labor is being done or service performed in the expectation of compensation, he stands silently by and permits the labor or service to continue." *Chesebro* v. *Lockwood,* 88 Conn. 219, 224, 91 Atl. 188. Upon this record as it stands, therefore, we sustain the conclusion of the trial court that there was an implied con-

tract, that this defendant would .pay the reasonable cost of the care and keep of these cows.

We turn now to the ruling upon evidence. The defendant called Arthur G. Bill, an attorney at law, who said in response to questions by the present counsel for the defendant, that he had acted as counsel for Lewis in times past; that he was consulted by him in regard to this action before it was brought; that Lewis showed him the letter written by plaintiff's counsel, and that by request of Lewis he had a telephone conversation with the plaintiff's attorney regarding this same matter a day or two after the letter was received. He was then asked to repeat the conversation. It was objected to by counsel for the plaintiff, but no ground of objection stated. The court sustained the objection and excluded the evidence.

It is clear that the plaintiff's attorney was authorized to speak for the plaintiff upon the matter referred to in the letter. It is equally clear that the defendant's attorney, Bill, was authorized to speak for the defendant in reply to the letter making the claim or demand.

Moreover, the defendant's attorney had a clear right to assume that the plaintiff's attorney was authorized to represent the plaintiff in regard to that particular matter. The ostensible authority of the plaintiff's attorney to speak for the plaintiff in this conversation with the defendant's attorney, under the well known rules of agency, is undoubted. This conversation was clearly prima facie admissible. It has been held that if a person calls on the telephone of another and that is answered by one who claims to represent that other, and carries on a conversation as to a matter of business for that other, that conversation is prima facie evidence of the authority of the person so answering. And again, the presumption

that a person who so answers a telephone call, is authorized to speak, may be slight or strong according to the circumstances, but the statements of such a person are admissible in evidence as prima facie the statements of one having authority to speak. Jones, Commentaries on Evidence (2d Ed.) Vol. 2, p. 1481, § 808; Vol. 1, p. 350, § 205. Of course we have no means of knowing what bearing, if any, this telephone conversation may have had upon the facts or law of this case, nor are we informed as to the grounds for its exclusion by the court, but it was prima facie admissible evidence, and its exclusion was error.

This record does not show what was claimed for and against the admission of this testimony as required by Practice Book, p. 276, § 151. Furthermore we cannot hold upon this record, that the testimony was of such materiality that its exclusion was reversible error. *State* v. *Perretta,* 93 Conn. 328, 343, 344, 105 Atl. 690; *Fernandez* v. *Thompson,* 104 Conn. 366 367, 132 Atl. 895; *Dudley* v. *Hull,* 105 Conn. 710, 721 136 Atl. 575.

There is no error.

In this opinion the other judges concurred.