In the Matter of the
**ESTATE OF LUCILLE JOSEPH, Deceased**

Probate No. 15 - 1955

District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

District Court Commissioner

November 4, 1955

*Same case on appeal, see p. 207, this volume*

JOHN L. PHILLIPS, ESQ., *for adminstrator, Leroy Joseph*
JAMES A. BOUGH, ESQ., *for claimant Leonard LaBeet*

GEORGE A. MENA, *District Court Commissioner*

On the 27th day of October, 1955, a hearing was had before the Commissioner, on the contested claim of Leonard LaBeet, filed in the above estate. The claim is for room and board paid by claimant, Leonard LaBeet, for and on behalf of his sister, Lucille Joseph, nee La Beet, originally filed for the period October 1941 to November 1945 at $15.00 per week, totalling $2,880.00. The claim was rejected by the Administrator on October 7, 1955.

Appearances were: Leroy Joseph, Administrator, with his attorney John L. Phillips, Esquire; Leonard LaBeet, claimant, with his attorney James A. Bough, Esquire.

Attorney Bough moved for correction of the claim as follows:

Strike out the word "decedent" and insert "claimant", and correct the period of time from "October 1941 to November 1945" to "November 1941 up to and including November 1943", totalling $1,500.00. This motion was opposed by Attorney Phillips. The Commissioner allowed the correction to be made before the hearing. The corrected claim was also rejected by the Administrator.

Testimony was taken, under oath, of the claimant, Leonard LaBeet, Mrs. Elmira Lockhart, and the Administrator, Leroy Joseph.

From the evidence adduced, it appears that claimant was fond of his sister, Lucille, the deceased, whose mother died when claimant was eleven years of age and father died a few years ago — Lucille had no relative in St. Thomas other than claimant when she arrived here in 1941. According to claimant's testimony, "my father told me to take care of Lucille. Lucille was not my mother's child. I raised her from twelve years up to when she

434

arrived here in 1941"; that when Lucille arrived, she seemed to have little money and her brother, the claimant, arranged with Mrs. Elmira Lockhart to room and board Lucille at the rate of $15.00 per week, which claimant paid without taking a receipt, and without any record being made by Mrs. Lockhart; that Lucille was born on August 20, 1907, and died November 2, 1950 in New York City; that decedent stayed at Mrs. Lockhart's home until she left for New York in the latter part of 1943, and returned in 1947 and opened a boarding house here; that Lucille assisted claimant at his Parkway Bar and Grill from the time she arrived and until she left for the States in 1943; that she worked for periods of time at the Telephone Central, Nursery School and possibly the U. S. Treasury Office established above the National Bank during this time; that it was not shown what were her earnings; that Mrs. Lockhart testified on some occasions Lucille paid her personally but she could not say where the money came from; that the claimant made no demand on his sister Lucille for the payment of this claim, and, so far [as] the evidence reveals, that he has never told Lucille that he considered her indebted to him for this expenditure. Claimant LaBeet testified that he expected Lucille to repay him when and if she were able to do so. It appears that Lucille bought real estate, a home, in St. Thomas, valued at $5,000.00 on November 25, 1949, the year she was married to Leroy Joseph; that this property has been appraised in this estate to have a value of $13,500.00; and that the claimant knew that Lucille had bought this property but never asked or demanded the payment of any part of his claim.

It appears, from a fair preponderance of the evidence, that claimant LaBeet paid for room and board for his sister Lucille at Mrs. Lockhart's home. It is equally clear,

from the evidence, that no express contract is alleged by claimant LaBeet and none existed.

The only basis on which claimant LaBeet could recover would be on the ground of an implied contract.

"In order to recover for the services, the plaintiff must affirmatively show, either that an express contract for the remuneration existed, or that the circumstances under which the services were rendered were such as exhibit a reasonable and proper expectation that there would be compensation. The reason of this exception to the ordinary rule is, that the household family relationship is presumed to abound in reciprocal acts of kindness and good will, which tend to the mutual comfort and convenience of the members of the family, and are gratuitously performed . . ." Disbrow v. Durand, 54 N.J.L. 343, 33 Am.St.Rep. 678; 1 L.R.A. (n.s.) 819.

Can the Commissioner find, from a fair preponderance of the evidence, that an implied contract existed at the time in question?

■ It is evident that claimant LaBeet was fond of his sister Lucille (who was 34 years of age in 1941); that claimant was about to open his Parkway Bar and Grill in 1941 and was happy to have the assistance of his sister Lucille in the running of his business. It may, parenthetically, be mentioned that claimant LaBeet testified that on some nights he made as much as $300.00. It is clear that there was a mutuality of benefit to each other — he was paying for her room and board and she was assisting him to run his Parkway Bar and Grill.

"The reason, or one of the reasons, for the rule that where parties are members of the same family their services are presumed to be gratuitous is that one rendering service to the other receives reciprocal services in return . . ." Snyder v. Guthrie, 193 Iowa 624, 187 N.W. 953, 24 A.L.R. 950.

■ There is nothing in the evidence tending to show that Lucille knew, or should have known, that her brother expected to be repaid.

"To give rise to an implied contract to pay for services they must have been rendered by one party in the expectation that the other party would pay for them, and have been accepted by the other party with knowledge of that expectation . . ." Baker & Co. v. P. Ballantine & Sons, 137 A.L.R. 916; Collins v. Lewis, 111 Conn. 299; Kearns v. Andree, 107 Conn. 181; 59 A.L.R. 599.

■ ■ The time arrived when Lucille got a job at the Telephone Central, at the Nursery School, and possibly at the U. S. Treasury Office. Yet, she continued to assist the claimant in his business. Mrs. Lockhart testified that Lucille paid her personally on some occasions. Is it reasonable to assume that her brother would continue paying $60.00 a month for her room and board while she was working? This does not seem reasonable; and, if he did, is it not reasonable to assume he did so because she assisted him in his business and because she was his sister for whom he was very solicitous. Again, a mutuality of benefit to both parties mixed with brotherly love. Furthermore, when Lucille bought her home in 1949 and when she opened a boarding house after her return in 1947, which claimant knew about, he still did not ask her to repay him any part of his claim. Is it reasonable to believe that if he felt he had a claim against Lucille he would not have asserted it then? The most that claimant LaBeet could say was that he expected his sister to repay him whenever she was able to do so — when that time would be he himself did not seem to know. Perhaps he harbored the thought in the back of his head undreamed of by Lucille.

"All contracts must be good or bad in their original creation, and must not depend on subsequent contingencies. Liability for services cannot hinge on whether the party chooses at a future date to make them a gift or a charge." 28 R.C.L. 671.

■ ■ On the whole, it appears that there was no action, expression or conduct on the part of the claimant

437

LaBeet that could reasonably tend to apprise his sister Lucille that he expected repayment in the future.

"The courts regard with suspicion and disfavor claims brought against an estate for personal services rendered by relatives, especially where the latter are members of decedent's immediate family or household, as the presumption is that such services between persons occupying such relations are intended to be gratuitous . . ." 24 C.J. 281.

"Where the person rendering service is kinsman or a member of the family of their recipient, and *suit is brought for compensation after the latter's death,* there is a pronounced tendency to require a higher degree of certainty and definiteness in the evidence relied on to establish an agreement than is ordinarily demanded. Cases of this kind, it is thought, afford opportunity for fraud against the estate of the deceased persons, and, *therefore are not favored by the courts . . .*" (Italics mine). 58 Am.Jur. 526.

■ The Commissioner, therefore, finds that no contract, express or implied, existed between the claimant Leonard LaBeet and his sister Lucille Joseph, and that the room and board furnished Lucille by her brother, the claimant, Leonard LaBeet, were gratuitously furnished.

## Conclusion of Law

That the Estate of Lucille Joseph, Deceased, Probate No. 15 - 1955 is not legally liable for the claim of her brother, Leonard LaBeet. Wherefore, the claim will be, and the same is hereby, disallowed.