[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
 FACTS
The plaintiff is the owner of real property known as 678 West Lake Avenue, Guilford. She inherited this property from her deceased father, James Lee. She has resided at the premises with her mother, Grace Lee who is James Lee's second wife. The defendant Camille Addario is a daughter of James Lee from his first marriage. Mr. Lee was 22 years older than Grace Lee and he was in his sixties when the plaintiff was born.
This action was brought by the plaintiff to invalidate a mortgage in the amount of $50,000 which James Lee granted to the CT Page 5699 defendant on December 12, 1984 secured by the West Lake Avenue property. The plaintiff alleges there was no consideration for the mortgage and accompanying note and that it was executed as part of a process designed to protect the property from creditors of James Lee. The defendant, on the other hand, claims antecedent debts owed to her by the deceased James Lee constituted consideration for the note and mortgage. It is undisputed that no payments were ever made on this mortgage, no demands for payment were ever made, and the defendant mortgager made no attempt to foreclose the mortgage until she did so via her counterclaim filed in this action on November 22, 1991.
 II
At the conclusion of the plaintiff's case, the defendant moved for a dismissal as to the claim for relief that the court declare the mortgage in question invalid, pursuant to Connecticut General Statute § 49-13, citing Gordon v. Tufano, 188 Conn. 477
(1982). The court reserved decision on the motion.
In that case, our Supreme Court held that § 49-13 is not the appropriate statute where there is a controversy as to the validity and effect of a mortgage. However, in this case, the plaintiff relies on § 49-13 and § 47-31. The latter affords the plaintiff a remedy in the form of a quiet title prayer. This could then be the basis for relief under § 49-13.
The motion to dismiss is denied.
 III
In support of the plaintiff's contention that the mortgage was implemented to serve as a "buffer" against creditors should the decedent incur substantial medical bills, the plaintiff offered the testimony of Grace Lee and the disposition of Joan Solevo.
This testimony described James Lee as a very concerned father who feared that his serious heart condition would eventually cause him to incur substantial medical bills, that these bills would not be covered by insurance and the claimants would place liens on the family residence, thereby eventually depriving his very young daughter of her home and the estate he wished to leave her. Mr. Lee did not expect to live a long life. CT Page 5700
To discourage these "medical creditors," James Lee, purportedly on the advice of a lawyer friend, decided to get a family member to take a substantial mortgage on the residence with the understanding that it would only be utilized to "protect" the plaintiff's opportunity to inherit the property.
The defendant's explanation for the mortgage was that over the years she "gave" her father, James Lee, about $70,000, in various amounts on numerous instances. Her two brothers described James Lee as always broke and looking for money. They each knew of a few occasions on which Camille Addario loaned money to Lee. An employee of Addario indicated James Lee regularly came to the defendant's place of business to get money.
However, there appeared to be no question that Mr. Lee performed substantial property renovation work for Mrs. Addario and Grace Lee asserted any money he received from her was in payment for services rendered and materials supplied.
Confronted with these conflicting explanations, the court is obliged to examine the other evidence presented to evaluate its significance to each proposition.
Though she claims to have advanced up to $70,000 to her father, the defendant had virtually no records of such disbursements, save for a few checks totalling $1,000. Why she took a mortgage for $50,000 instead of $70,000 is not explained. And, by her own admission, much of this money she allegedly advanced would have been outlawed by the statute of limitations on December 12, 1984, as she started "giving" this money (the defendant's characterization) in the 1960's with much of it advanced in the 1970's.
Until 1981, Camille Addario had a one half interest in the property in question. By deed dated April 7, recorded September 9, she and Grace Lee quitclaimed the property to James Lee. This seems inconsistent with the actions of one who is owed so much money.
The defendant argues that it is significant that the defendant was permitted to take as a tax deduction the interest James and Grace Lee paid on their first mortgage. The plaintiff argues this was in consideration of her having co-signed the mortgage note when James and Grace Lee needed another signature to satisfy the mortgagee bank. Interestingly, this deduction CT Page 5701 continued being passed on to the defendant after the $50,000 mortgage was taken. The court does not consider this transaction to be supportive of the defendant's contention.
There are several other facts which favor the plaintiff's version of events.
In his will dated July 6, 1983, James Lee stated he was making no bequest to his daughter Camille because he had otherwise provided for her. He died on May 12, 1985. Camille Addario did not file a claim against his estate. In the return of claims filed by the executor, there is this notation:
 "There is a mortgage on record in the amount of $50,000 plus interest and costs mortgagee Camille Addario. No timely claim was presented and any such claim would have been disallowed."
The executor of the estate is the lawyer friend who purportedly participated in the discussions about this mortgage. He also prepared a release of the mortgage "for Camille to sign," and sent it to Grace Lee with instructions for its execution.
Based on the foregoing and the court's own observations of the witnesses, the court finds that the plaintiff's version of events is the more believable. The mortgage in question is found to be invalid and is discharged. It therefore follows the defendant's counterclaim seeking to foreclose the mortgage must be and is denied.
Though this finding is dispositive, since an appeal may follow this decision, the court will address below two legal issues raised by the parties.
 IV
The plaintiff makes the further argument that the mortgage is invalid and unenforceable as the debt secured by the mortgage has been abandoned.
A debt may be abandoned and a mortgagee may also abandon his right of security under the mortgage. Glotzer v. Keyes,125 Conn. 227, 233 (1939). In Glotzer v. Keyes, the court went on to say at page 233: CT Page 5702
 "To constitute an abandonment there must be an intention to abandon or relinquish accompanied by some act or omission to act by which such intention is manifested. Stevens v. Norfolk, 42 Conn. 377, 384; Collins v. Lewis, 111 Conn. 299, 303, 149 A. 668; 10 C.J.S., p. 8. While mere nonuser and lapse of time alone are not enough to constitute abandonment, they are competent evidence of an intent to abandon, and as such may be entitled to great weight when considered with other circumstances, and abandonment may be inferred from circumstances, such as failure by acts or otherwise to assert any claim to the right alleged to have been abandoned, or may be presumed from long continued neglect. New York, N.H. H.R. Co. v. Cella, supra, 522; Derby v. Alling, 40 Conn. 410. 436; 1 Am.Jur., p. 11; Keane v. Cannovan, 21 Cal. 291, 303, 82 Am. Dec. 738. Most frequently, where abandonment has been held established, there has been found present some affirmative act indicative of an intention to abandon, as in Peck v. Lee, supra, 377, where it was found that the mortgagee had destroyed the mortgage and the note which it secured, but non-user, as of an easement, or other negative or passive conduct may be sufficient to signify the requisite intention and justify a conclusion of abandonment. The weight and effect of such conduct depends not only upon its duration but also upon its character and the accompanying circumstances." (citations omitted).
The facts in this case support a finding that the mortgage was abandoned. No payment was ever made on either principal or interest and no demand for payment was made between the execution date and the filing of the counterclaim in this case on November 22, 1991, almost seven years. No claim was presented against the estate of the mortgagor. During this entire time, the widow of James Lee and the plaintiff occupied the mortgaged premises as their residence. No legal action was instituted against them. CT Page 5703
Even if the mortgage was valid when executed, these facts support the conclusion that the defendant intended to abandon this debt and the security interest.
 V
The defendant has argued in her post trial brief that she is entitled to an adverse inference with respect to the failure of the plaintiff to call the attorney who was executor of the estate and who was described as participating in discussions about the mortgage. To be entitled to such an inference, the defendant had the burden of proving that he was available to testify. This was not done and the court declines to entertain the request.Secondino v. New Haven Gas Co., 147 C 672, 675 (1960). In fact, the court was advised that the potential witness was away on vacation. The defendant did not press the matter at the time and the court assumed there was agreement on this point.
CONCLUSION
Judgment may enter for the plaintiff on the complaint and the mortgage is hereby discharged. Judgment may enter for plaintiff (defendant on the counterclaim) on the counterclaim.
Anthony V. DeMayo State Trial Referee