[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Upon completion of the trial to the court upon the first count of the counterclaim of defendant Tamms Industries Co. [Tamms] against plaintiff Pacitti Construction Corporation [Pacitti] the court placed on the record certain findings of fact. Those findings of fact and additional factual findings of this court, as hereinafter set out, were determined as a result of both direct and circumstantial evidence presented in the course of the trial on the complaint of Pacitti Construction v.Tamms Industries Co., et al as well as the defendants' special defenses, various cross-complaints, and counterclaims.
At various stages of the trial this court dismissed all causes of action arising out of the plaintiff's complaint and the defendants' counterclaim except for the first count of defendant Tamms' counterclaim. In that count, Tamms claims that it is owed a payment of $7,342.50 by Pacitti for waterproofing material, known as "Chemstop," which Tamms delivered to Pacitti and which was subsequently used by Pacitti on the outside of masonry walls of a multiple-floor building in the Glastonbury Corporate Center Development. CT Page 9959
The remaining issues and questions that must be addressed are those questions of fact and law presented and raised by the first count of the defendant's counterclaim against the plaintiff. The counterclaim is set forth, in part, below:
 2. Plaintiff ordered various products from the answering defendant as alleged in paragraph 10* of the plaintiff's complaint.
 3. Pursuant to the plaintiff's order, the answering defendant provided said products to plaintiff and plaintiff used and benefitted [benefited] from said products.
 4. Said defendant issued to plaintiff invoice # 248490, dated September 25, 1991, for $7,342.50 for said products.
5. Plaintiff has not paid the said invoice.
 6. By reason of the foregoing, defendant Tamms demands judgment over against the plaintiff, in the amount of $7342.50 together with interest, costs and legal fees.
Paragraph 10 of the plaintiff's complaint provides:
 10. To rectify the leakage, Pacitti entered into a second agreement with a second contractor for the purchase and application of masonry waterproofing manufactured by Tamms.
In avoidance of the counterclaim, the plaintiff replied as follows:
 Plaintiff's First Reply in Avoidance of the Counterclaim
 Plaintiff is not liable for the purchase price of the product ordered as alleged in Paragraph 10 of the complaint pursuant to the terms of the limited warranty issued by defendant Tamms Industries Co. on March 21, 1991. CT Page 9960
 Plaintiff's Second Reply in Avoidance of the Counterclaim
 Defendant Tamms Industries Co. is itself responsible for and all damages it claims to have suffered for the reason that it was negligent and careless in specifying the type and amount of waterproofing product to be applied to the buildings specified in the plaintiff's Complaint in that the type and amount of product was insufficient to prevent moisture penetration of the buildings.
 Plaintiff's Third Reply in Avoidance of Counterclaim
 Any damages claimed by defendant Tamms Industries in its counterclaim are due to the negligence of defendant Bessette Contractors in performing its contract with plaintiff as alleged in Count One of the complaint.
In order to address the issues raised by Tamms' counterclaim and Pacitti's special defenses thereto, the court must review all the evidence that has come before it during the entire trial and recite appropriate findings.
Pacitti was a contractor involved in the building of a commercial contract known as Glastonbury Corporate Center Development. One of the buildings was a 5 or 6 story "L" shaped structure. Sometime around 1988-1989, it was discovered that the building was experiencing water damage. A representative of Tamms, a company in the business of selling and distributing Chemstop, a waterproofing material visited the job site and observed signs of water damage within the building and cracks in the masonry walls. Pacitti entered into a contract with defendant Bessette Contractors to apply Chemstop, to be supplied by Tamms; Tamms supplied written instructions setting out the terms and conditions that were required to be performed as a prerequisite to Tamms issuing a limited warranty for the waterproofing material. Pacitti's contract with Bessette called for certain terms and conditions as to how the material should be applied. In addition, this contract effectively incorporated the terms, conditions, and instructions set forth by Tamms as to the terms and conditions that were to be met as a prerequisite to Tamms' CT Page 9961 issuance of a limited warranty.
Obviously, waterproofing material will not work if there are holes, cracks, or voids in the surface being sealed from water penetration. The conditions that were required to be complied with as a prerequisite to the issuance of the warranty by Tamms, after application of its product by Bessette, are set out in Tamms' letter of intent to issue a limited (ten year) warranty, as follows:
 1. All surfaces to receive Chemstop are clean, dry for a minimum of 48 hours prior to application, free or dirt, grease and all other contaminants.
 2. All surfaces are free of voids, slits, or openings and have been properly tuck pointed.
 3. Chemstop is purchased in its entirety from a single source supplier.
 4. Chemstop is used as purchased from the supplier without diluting or modifying.
 5. Tamms is notified at least 72 hours prior to application for a job site inspection.
 6. Chemstop is applied according to all manufacturers' printed recommendations.
 7. A Verification of Applicator (VOA) is completed, signed, and returned to Tamms upon project completion.
 8. A sample of Chemstop must be applied in the presence of a Tamms representative to determine the exact coverage rate prior to the project commencement.
(Plaintiff's Ex. #9).
After the initial application of Chemstop, there remained a water penetration problem which resulted in further water damage CT Page 9962 to the building. The same Tamms representative revisited the job site, went to the roof of the building and, upon looking down, was able to observe voids in the sills of the windows; on his first visit to the job site he did not go onto the roof of the building. The Tamms representative testified that the windows were curved and set above straight sills leaving large voids. He noted other cracks in the masonry surfaces. The representative was not able during his first visit, nor on the subsequent visit to the job site, to see the third, fourth, or fifth floor levels from a ground position. During his first visit to the job site, however, the representative did not make use of a device or method to elevate himself to inspect the upper floors. Moreover, there is no evidence that any attempt was made by him to make such observation possible by securing appropriate equipment.
There were obvious cracks and voids in the walls of the building. Pacitti knew of the cracks and voids. In addition, Bessette Contractors admits that it knew of the cracks and voids and, in fact, marked them with tape and photographed them.
The voids and cracks existed prior to the first application of the waterproofing material. There is no dispute that the cracks and voids existed after the first application and before the second application of the waterproofing material. The voids and cracks existed 72 hours prior to the first application of Chemstop, the time when Tamms claimed to have made an inspection of the building to Plaintiff's Exhibit #9, as previously set forth herein.
Based upon the photographs in evidence, the testimony of various witnesses and the circumstances that then and there existed, it is apparent that any reasonable inspection made by a Tamms representative, pursuant to their own terms and conditions as set out in Plaintiff's Ex. #9, would and should have been the basis for discovering the obvious cracks and voids in and about the wall surface. Tamms knew or should have known of the condition of the surface that was intended to be sealed from water penetration prior to the first application of Chemstop.
After the first application of Chemstop, Bessette submitted an admittedly false "Verification of Applicator" [VOA]. (Defendant Tamms' Ex. #1). As justification for submitting the false VOA, Bessette claims it wanted to get paid and that Pacitti would not pay Bessette until Tamms issued its limited warranty. Accordingly, Bessette issued the VOA and, thereafter, Tamms CT Page 9963 issued the limited warranty to Glastonbury Land Development Ltd., the owner of the premises.
Tamms had no right to rely, nor did Tamms rely, on the VOA form prior to issuing the limited warranty. Tamms knew or should have known that what was stated by Bessette in the VOA was not true. This court concludes that all of the original parties knew of the improper condition of the surface to be waterproofed and that neither Pacitti nor Tamms complied with the terms of the expressed contracts by and between them.
The court cannot find, by a preponderance of the evidence offered, what caused the water problem in existence after the first application of Chemstop and before the second application of Chemstop. There is no evidence from which this court is able to determine, directly or inferentially, whether the water damage or seepage was a result of the failure of the product, or the manner of its application, or because of the voids and cracks that were not grouted, caulked and/or sealed prior to the first application of Chemstop.
There is evidence that the second supply of waterproofing material, Chemstop Heavy Duty, was delivered and billed for by Tamms and subsequently used by Pacitti. There is no testimony as to what the intent of Tamms and Pacitti was as to payment for the second supply of Chemstop. The invoice (Defendant Tamms' Ex. #3) does have on it "prepaid" which is marked and/or crossed off; there was no further explanation and the amount was never paid.
The limited warranty provides, in part, that in the event of the failure of the material when properly applied to waterproof the surface, subsequent waterproofing material supplied by Tamms to be used by Pacitti would be without charge.
After the first application of Chemstop, and prior to the delivery of the second supply Chemstop, to the Pacitti job site, the Tamms representative who had made the initial visit to the job site and the inspection after the first application directed a letter to Pacitti. That letter, (Plaintiff's Ex. #4) made certain recommendations, one of which was to "[a]pply an even coat of Chemstop Heavy Duty, to all masonry surfaces at a minimum of 50 sq. feet per gallon." The specification for the first application was "Chemstop Regular" at a rate of 60 square feet per gallon. The recommendation for the second application of waterproofing material exceeds the requirements for the first CT Page 9964 application; more gallonage was recommended and Chemstop Heavy Duty was to be used in place of Chemstop Regular.
The Tamms representative testified that his recommendation for the heavier application of Chemstop was made in his letter to Pacitti because Pacitti wanted to be sure of the material's effectiveness and Tamms wanted to keep its customer satisfied.
From the above facts the court must conclude by inference that, at least in the mind of the Tamms representative, Chemstop Regular as applied was not doing the job of waterproofing the walls. Certainly, increasing the volume of the material to be used in a second application because the client requested it and to keep the client satisfied makes little sense when, in fact, it is Pacitti whom Tamms now claims is obligated to pay for the second supply of Chemstop.
A contract is a meeting of the minds of two or more persons to do or not to do a particular thing. In order to have a valid contract there must be mutuality of obligation. A contract may be written or oral, express or implied from the conduct of the parties.
There is no evidence of the existence of either a written or oral express contract for the sale of, delivery of, and payment for the second supply of Chemstop. In other words, there is no evidence that Tamms promised to sell and deliver the Chemstop Heavy Duty and that Pacitti agreed to pay a certain sum upon its delivery and/or use.
Accordingly, if Pacitti is obligated to pay for the second supply of Chemstop, which the court has found to have been delivered to and used by Pacitti on the job site, that obligation must arise by virtue of an implied contract. "An implied contract is an agreement between the parties which is not expressed in words but which is inferred from the acts of the parties."Brighenti v. New Britain Shirt Corporation, 167 Conn. 403, 406,356 A.2d 181 (1974). "A true implied contract can only exist where there is no express one." Collins v. Lewis, 111 Conn. 299,304, 149 A. 688 (1930). "The test is whether the conduct and acts of the parties show an agreement." Brighenti v. New Britain ShirtCorporation, supra.
Generally, when materials are delivered by a party who is in the business of selling such materials to another party and that CT Page 9965 party accepts and uses the material there is a strong inference that the parties had a meeting of the minds that a reasonable price would be paid for the goods received and used. See Collinsv. Lewis, 111 Conn. 299, 304, 149 A. 688 (1930) (an implied contract arises where "a plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefor, and the defendant, knowing of such circumstances, avails himself of the benefit of those services.").
"The general rule is that the burden of proving . . . a counterclaim is on the defendant." Ruscito v. F-Dyne ElectronicsCo., 177 Conn. 149, 166, 411 A.2d 1371 (1979). "A defendant prevails on a counterclaim not by reason of the weakness of the plaintiff's case, but because of the strength of his own." (Citations omitted.) Id. This court is unable to conclude by a fair preponderance of the evidence based upon all of the evidence presented that there was an agreement by and between Tamms and Pacitti that imposed an obligation on for the part Pacitti to pay for the second supply of the waterproofing material. In the present case there exist circumstances that compel the contrary inference. There was no testimony as to the intent of the parties as to payment for the second supply of Chemstop. Further, the limited warranty provides that if Chemstop failed to perform when properly applied, subsequent waterproofing material supplied by Tamms would be free of charge. In addition, the Tamms representative stated that his motivation for recommending an increased strength and volume of Chemstop was to keep Tamms' customer satisfied; this testimony and the defendant's claim for payment are incongruous.
Accordingly, judgment for Pacitti Construction against Tamms Industries Co. on the first count of Tamms' counterclaim.
JOHN WALSH, J.