BERSHTEIN, BERSHTEIN AND BERSHTEIN, P.C. *v.*
DEBORAH NEMETH
(14348)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued October 31, 1991—decision released February 25, 1992

*Mark Rademacher,* for the appellant (plaintiff).

*Deborah L. Nemeth,* pro se, the appellee (defendant).

COVELLO, J. This is an action for breach of contract that involves a successor attorney's alleged agreement to pay the reasonable value of prior counsel's legal services. The issues presented on appeal are: (1) whether there was any evidence of an express agreement by successor counsel to pay the reasonable value of prior counsel's services; and (2) whether successor counsel's acceptance of a case creates an implied in law contract to pay the reasonable value of prior counsel's services. We agree with the trial court that there was no evidence of an express agreement to pay for prior counsel's services and we conclude that no implied in law contract existed. We, therefore, affirm the judgment of the trial court.

The following facts are undisputed. On September 30, 1985, Anthony Falcigno was injured in an automobile accident. Shortly thereafter, Falcigno engaged the plaintiff law firm (law firm) in connection with his negligence claim for damages and personal injuries arising out of the accident. The law firm agreed to represent Falcigno on a contingent fee basis to the end that the firm would receive as compensation one third of any recovery obtained. In early April, 1987, Falcigno terminated his relationship with the law firm and retained the defendant, attorney Deborah Nemeth, to pursue his negligence claim. The defendant and Fal-

cigno agreed to a similar contingent fee arrangement whereby the defendant would receive as her compensation one third of any recovery.

Later that month, the defendant requested that the law firm give her a copy of Falcigno's file and an accounting of the work performed to date so that she might propose an agreement as to how the law firm would be compensated for the time spent on the case. The law firm never sent the defendant either the file or the accounting. There was never any written agreement between the parties as to how the law firm would be compensated for the services, and oral discussions on the subject broke down after the law firm failed to furnish the defendant with the requested copy of the file and the accounting of the services. Several months later, the defendant settled the case and disbursed the net proceeds to Falcigno.[1] In November, 1987, after the defendant had informed the law firm of the settlement, the firm sent her an accounting of the time spent on the file totaling 117.5 hours, together with a bill to her in the amount of $14,564.90. The defendant refused to pay.

In January, 1990, the law firm commenced this breach of contract action alleging in the complaint that the defendant "agreed . . . to pay the plaintiff the reasonable value of [the] legal services performed on behalf of Mr. Falcigno." The defendant denied that this was the case. The matter proceeded to trial. At the close of the law firm's case, the defendant moved for a dismissal pursuant to Practice Book § 302[2] for fail-

[1] There is nothing in the record concerning the extent of Falcigno's injuries and damages or the amount of the settlement with the tortfeasor.

[2] Practice Book § 302 provides: "If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced his evidence and rested his cause, the defendant may move for judgment of dismissal, and the court may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made."

ure to make out a prima facie case. The trial court granted the motion and rendered judgment for the defendant concluding that there was no evidence "of any agreement of any kind that was reached" between the parties.[3] The law firm appealed to the Appellate Court and we thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.

I

The law firm first claims that, contrary to the trial court's finding, there was evidence that the defendant expressly agreed to compensate the firm for the reasonable value of the legal services performed on behalf of Falcigno. The law firm argues that "[t]he evidence offered by the plaintiff [was] to be taken as true and interpreted in the light most favorable to the firm and every reasonable inference [was] to be drawn in [its] favor." *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.*, 187 Conn. 544, 548, 447 A.2d 406 (1982). While we agree that this is the standard to be applied in considering a motion to dismiss pursuant to Practice Book § 302, we disagree with the law firm's contention that there was evidence of an express agreement to pay for the services at issue. The law firm is unable to point to any evidence in the record supporting the contention that an express contract existed and our examination of the record indicates that none

---

[3] The trial court also concluded that the statute of frauds, General Statutes § 52-550 (a) (2), barred the law firm's claim because there was no writing evidencing an agreement to pay the debt of another, i.e., Falcigno's debt to the plaintiffs. General Statutes § 52-550 (a) (2) provides: "STATUTE OF FRAUDS; WRITTEN AGREEMENT OR MEMORANDUM. (a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (2) against any person upon any special promise to answer for the debt, default or miscarriage of another . . . ."

Because we affirm the judgment on alternate grounds, we do not discuss this issue.

exists.[4] When, as here, the trial court's conclusion that there was "no evidence . . . of any agreement of any kind" between the parties is borne out by the record, it will not be disturbed on appeal. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

## II

The law firm next claims that even if there was no evidence of an express undertaking by the defendant to pay the reasonable value of the services, the circumstances present give rise to an implied in law contract to do so. The law firm argues that the Connecticut Bar Association Committee on Professional Ethics, Formal Opinion No. 31 (1978),[5] requires that a successor

[4] On the contrary, on two occasions, the law firm's only witness conceded that there was no express agreement, oral or written, between the parties as to any fee arrangement. The relevant colloquies occurred as follows:

"[Defense Counsel:] Okay. And was any fee arrangement ever made with Attorney Nemeth?

"A. No, it wasn't.

\* \* \* \*

"[Q.] Just to get this straight, is it your testimony that your office has nothing signed by Attorney Nemeth agreeing to pay a specific fee to your office after settlement or trial of the case?

"A. I don't believe there was any agreement.

"Q. Does that mean no, there's no agreement?

"A. Again I don't know what went on after I left. No, as far as I know

. . .

"Q. Okay. And in your file, after having reviewed the file is there any agreement signed by Attorney Nemeth?

"A. No, there isn't."

[5] Formal Opinion No. 31 (1978) provided in pertinent part: "We conclude that when a client seeks new counsel and is met with the insistence of initial counsel that an arrangement be made to protect his fee and to honor obligations he has made to physicians, the new attorney may not accept the case unless he provides to the initial counsel one of the following:

"a) An agreement signed by both the initial attorney and the new attorney establishing the method for division of the ultimate fee. As suggested by our Supreme Court this might be through the payment of compensation for the number of hours the initial attorney has spent or perhaps through the proration of the contingency fee between the two lawyers based upon the hours each spends: or

attorney provide prior counsel with: (1) an agreement establishing the method of division of the ultimate fee; or (2) a letter stating that he or she will hold the amount of the contingency fee until arrangements for its disposition between the attorneys are made either by agreement, arbitration or court order. Since the defendant did neither of these things, the law firm argues that an implied in law contract has arisen to pay the reasonable value of their services. We do not agree.

" 'A true implied [in fact] contract can only exist where there is no express one. It is one which is inferred from the conduct of the parties though not expressed

"b) A letter stating that upon the conclusion of the client's matter, he will hold in his clients' funds account the amount required under the initial lawyer's contingency fee arrangement until its disposition has been determined by agreement, voluntary fee dispute arbitration proceedings, or a court. . . ."

The Connecticut Bar Association Committee on Professional Ethics, Revised Formal Opinion No. 31 (1988), replaced Formal Opinion No. 31 (1978). The commission explained that it was issuing the revised opinion because of new developments in the law and the adoption of the Model Rules of Professional Conduct in 1983. One important change in the revised opinion is the omission of language from the prior opinion that required successor counsel, when representing the same client on the same matter, to reach an agreement with prior counsel concerning fee reimbursement before accepting the case. The revised opinion is cast, instead, in terms of the discharged lawyer's duties with respect to the former client's file.

Revised Formal Opinion No. 31 provides in pertinent part: "We hold that a discharged lawyer on a contingency fee violates Rule 1.16 (d) when he retains the file after demand for its surrender if (a) there is an agreement with the client or successor counsel concerning payment of fees and expenses or (b) successor counsel provides the discharged lawyer with a letter that he will hold in his clients' funds sufficient proceeds from the settlement to pay the discharged lawyer what he would have been entitled to under his contingency fee agreement . . . until the fee dispute is resolved by a court or otherwise."

Rule 1.16 (d) of the American Bar Association Model Rules of Professional Conduct (1983) provides in pertinent part: "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled . . . . The lawyer may retain papers relating to the client to the extent permitted by other law."

in words. Such a contract arises where a plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefor, and the defendant, knowing such circumstances, avails himself of the benefit of those services. In such a case, the law implies from the circumstances, a promise by the defendant to pay the plaintiff what those services are reasonably worth.' *Collins* v. *Lewis,* 111 Conn. 299, 304, 149 A. 668 [1930]; *Gustave Fischer Co.* v. *Morrison,* 137 Conn. 399, 403, 78 A.2d 242 [1951]; *Automobile Ins. Co.* v. *Model Family Laundries, Inc.,* 133 Conn. 433, 439, 52 A.2d 137 [1947]." *Freda* v. *Smith,* 142 Conn. 126, 134, 111 A.2d 679 (1955). Both express contracts and contracts implied in fact are based on consent. 17A Am. Jur. 2d, Contracts § 13 n.13.

"In distinction to an implied [in fact] contract, a quasi [or implied in law] contract is not a contract, but an obligation which the law creates out of the circumstances present, even though a party did not assume the obligation, and may not have intended but in fact actually dissented from it. . . . *It is based on equitable principles* to operate whenever justice requires compensation to be made." (Citations omitted; emphasis added.) *Brighenti* v. *New Britain Shirt Corporation,* 167 Conn. 403, 407, 356 A.2d 181 (1974). "With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed to examine the circumstances and the conduct of the parties and apply this standard." *Cecio Bros., Inc.* v. *Greenwich,* 156 Conn. 561, 564–65, 244 A.2d 404 (1968).

In examining the circumstances and conduct of the parties in the present instance, we perceive from the

record that the defendant requested, in addition to the file, an accounting of the law firm's time spent on the case to date in order that an agreement pursuant to Opinion No. 31 could be formulated. The law firm refused to comply with either request. The defendant, without the benefit of the file, had to proceed with the case based upon her own initiative in what was obviously a duplication of the previously rendered legal services. It was only after she notified the law firm of the settlement that the firm sent her the previously requested accounting along with a bill for $14,564.90. "The plaintiff seeks equity only for himself, but this he may not do. One who seeks equity must also do equity and expect that equity will be done for all." *LaCroix* v. *LaCroix,* 189 Conn. 685, 689, 457 A.2d 1076 (1983). Where, as here, there was neither delivery of the requested accounting nor the case file, thereby forcing a duplication of legal effort in order to dispose of the litigant's case, we are not inclined to say that equitable principles dictate that successor counsel pay prior counsel the reasonable value of their services.[6]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[6] In so holding we do not intend to disavow the well established proposition that an attorney has a retaining or possessory lien on a client's papers and files that the attorney may hold until his fee has been paid. *Marsh, Day & Calhoun* v. *Solomon,* 204 Conn. 639, 643, 529 A.2d 702 (1987). The exercise of this lien right, however, has classically arisen in the context of an attorney's claim against the former client. In determining the rights and obligations as between prior and successor counsel, however, unwarranted retention of the file and failure to, in any manner, cooperate with successor counsel can raise equitable considerations that could operate to prior counsel's detriment, as is the case in the present instance.