[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By its amended complaint the plaintiff Yale University School of Medicine/Office of Professional Services (Yale OPS ) seeks to recover inter alia for medical services which the defendant Barbara Wurtzel (Barbara) allegedly received from Yale OPS during the period from August 14, 1987 to September 27, 1987.
The plaintiff's amended complaint is in two counts, with the first count directed against the defendant Barbara and the second count is directed against her husband, Richard Wurtzel (Richard). The first count alleges that Yale OPS rendered medical services to Barbara on and after August 14, 1987 for which there is currently due the sum of $4870.00, this is denied. It also alleges that although demand was made upon Barbara for payment she has "failed, refused and/or neglected to pay this debt; this allegation is admitted except that "the existence of a debt" is denied.
The second count, which is against Richard Wurtzel incorporates the first two paragraphs of the first count which CT Page 9175 are again denied. It also alleges in effect that pursuant to General statutes 46b-37[1] Richard, as Barbara's husband is responsible for the plaintiff's bill. The answer here leaves the plaintiff to its proof. It is further alleged that although demand for payment was made upon Richard, he has "failed, refused and/or neglected" to pay this debt. Again the answer admits this allegation but denies the existence of a "debt".
By way of relief the plaintiff claims money damages, interest, reasonable attorneys fees and a reasonable order of payments by the defendants under the statute from any debts due then for personal services.
Both defendants have interposed their revised counterclaim which is in three counts to the plaintiff's amended complaint. In the first count, it is alleged, and Yale OPS admits, that Barbara was admitted to Yale-New Haven Hospital (YNHH) for treatment in August and September 1987 and that after her release from the hospital, she and Richard received a bill for $4,870.00 from Yale OPS for medical service. The remaining allegations of this first count, all of which are denied, are that upon their questioning of Yale OPS as to the bill Yale OPS sued them, that because of this lawsuit the Wurtzels were forced to retain counsel to defend themselves, that Yale OPS failed to provide the services for which it is billing them and which are the basis of their suit and that the bringing of this action by Yale OPS for services not provided by it is a violation of General statutes42-110b(a) of the Connecticut Unfair Trade Practices Act (CUTPA).
In the second count of the revised counterclaim the only allegation admitted by Yale OPS is that Barbara was admitted to YNHH for treatment. The remaining allegations, which are denied, are that the Wurtzels were led to believe by the agent, employees and/or representations of Yale OPS that the charge of YNHH would be the complete bill to be charged for Barbara's hospital stay, that the Wurtzels were not told by the agents, employees and/or representative of YNHH that the doctor's fee would not be included, that the hospital bill has been paid in full and now the Wurtzels are being charged for a doctor's fee for which they did not contract, that the Wurtzels relied on the representation of the YNHH and the representation of the agents, employees and/or representative of the Yale OPS in electing to have Barbara "become a patient there" and that the misrepresentations have resulted in a loss to the Wurtzels. CT Page 9176
The third count of the revised counterclaim realleges every allegation of the second count and Yale OPS makes the same answer as to those allegations here as it did in the second count. The third count, however, adds the allegation, which is denied, that the actions complained of here are a violation of General statutes 42-110f(a) of the Connecticut Unfair Trade Practices Act (CUTPA).
The counterclaim claims "damages under 42-110(a) et seq. including but not limited to 1. money damages; 2. Attorney's fees; 3. Punitive damages."
In addition, Yale OPS have also interposed three special defenses to this counterclaim. The first special defense is that on or about August 15, 1990, the Wurtzels acknowledged that Yale OPS was a separate and distinct entity from YNHH. The second special defense is that on or about August 15, 1990, Barbara Wurtzel authorized her insurance carrier to pay Yale OPS any benefits due under her insurance plan and agreed to pay any remaining balance or any expenses not covered under her insurance plan, that Yale OPS filed a claim for medical charges with Blue Cross Blue Shield of Connecticut on behalf of the Wurtzels, that Blue Cross Blue Shield of Connecticut made benefit payments directly to the Wurtzels for medical treatment provided by Yale OPS which are the basis of this lawsuit, that the Wurtzels have refused, failed or neglected to forward said funds to Yale OPS despite demand made, that the Wurtzels have refused, failed or neglected to pay the remaining balance for these medical services despite demand made and that Yale OPS has not received any payment for these medical services. The Wurtzels' reply alleges "no specific knowledge" as to all three special defenses and leaves Yale OPS to its proof on each.
The plaintiff maintains that it has proven that it is entitled to recover on the first count in implied contract or quantum meruit for services rendered and against Richard Wurtzel on the second count pursuant to General statutes 46-b-37. It also contends that the defendants have not proven the allegations of their revised counterclaim which sounds in actions constituting CUTPA violations as well as misrepresentation. The plaintiff also asks that it be awarded pre judgment interest and attorney's fees based on certain statutes cited by it.
The defendants first argue that no contract can be found CT Page 9177 because the plaintiff is trying to enforce a contract that was not negotiated or agreed to, that it would be between a party that did not know of the other party, was at an open ended rate not agreed to and where the rates used by the plaintiff to come to the amount of its charges were not only unknown but were unrelated to any claimed services to be performed. In discussing implied contract, the defendant's contend that there was no such contract because there was no agreement between the parties because the defendant did not even know the plaintiff existed and the conduct and acts of the parties did not show any agreement as to anything. It is also maintained that "should the court find that an implied or quasi-contract did exist, the defendant reiterates that no proof has been offered as to "the reasonable cost of the services provided or of a reasonable rate of compensation for these services." Pointing to certain evidence that demonstrated that the plaintiff Yale OPS and the YNHH were separate legal entities, the defendants further claim that has been no proof, if the plaintiff so claims, that there was an agency relationship between Yale OPS and YNHH as well no pleadings of the plaintiff to that effect. The defendants, referring to the recent case of Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 88 (1992), assert that they have proven the CUTPA claims in their counterclaim made and are entitled to damages under the CUTPA statute. Although the defendants include a count in misrepresentation in their counterclaim, their post-trial brief does not include any claim as to that count. Finally, the defendants argue that certain evidence admitted at the trial which was contrary to a disclosure filed by the plaintiff constituted surprise and materially prejudiced them.[2]
Having in mind that credibility is for the trier of fact there are certain facts that this court can find which may appropriately be set out at this point and additional findings of fact will be made later in this memorandum as occasion requires.
YNHH and Yale University are separate legal corporations. The Yale School of Medicine is a part of Yale University; it is a graduate school of Yale University and is not a separate corporation. The Department of Psychiatry is a department of the Yale School of Medicine. Many faculty members of the faculty of the Yale School of Medicine have privileges at YNHH and provide care to some patients at YNHH.
The plaintiff Yale OPS is a Connecticut corporation. Yale OPS is responsible for the billing activity concerning services CT Page 9178 rendered YNHH patients by faculty members of the Yale School of Medicine. Dr. James Nelson is the chief of the Department of Psychiatry at the Yale School of Medicine. It is the policy of Yale OPS that the chief of the department bills i.e. Dr. Nelson for the services of physicians who provide attending care for patients at YNHH.
Barbara Wurtzel, the wife of Richard Wurtzel, was voluntarily admitted to YNHH on August 14, 1987 and was discharged on September 24, 1987. She entered seeking inpatient professional psychiatric care. While there she was a psychiatric patient on the Adult Treatment Unit (ATU). This Unit is in turn divided into two units or teams, the first being an evaluation unit and the second being a treatment unit on each of which Barbara, was a patient in turn. A preliminary diagnosis is made on admission, a working diagnosis is made within five days and a final diagnosis is made on discharge. When admitted Barbara came with depressive symptoms, was in some danger and exhibited some evidence of pressure. A diagnosis of bipolar disorder was made. Tests of a psychiatric, psychological and neurological nature were performed, investigations conducted, and medication prescribed and changed as medically determined. She participated in art and family therapy groups. She was seen by physicians, nurses and other staff members including a social worker and a psychologist in this unit. This worker included checking information with Barbara's husband, Richard by Dr. Nelson's staff. Richard Wurtzel himself admitted he spoke to Ann Schwarz, a social worker under Dr. Nelson's supervision in the ATU. Over her time on the ATU Barbara's condition improved, her medication was reduced and her symptoms moderated.
Dr. James C. Nelson is a physician who has been a faculty member of the Yale School of Medicine since 1974 and a Connecticut licensed physician since 1969. Among other positions he holds he is also the Director of the Adult Treatment Unit at YNHH. The ATU is a multi-complex unit consisting of a physicians, psychologist, social workers and nursing staff. The ATU has two teams each of which is responsible for a certain number of patients. He is responsible for the overall treatment plan of this psychiatric unit, i.e. the ATU, as well as the administration of its multi-disciplinary staff. He supervises all the care rendered by the ATU. He sees patients in the ATU and saw the defendant Barbara Wurtzel as did other physicians and staff on the ATU. Dr. Nelson also directly verifies any information concerning patients, including Barbara Wurtzel, to CT Page 9179 determine if it is consistent with his observations. It may be noted here that Dr. Nelson conducted the initial consultation of Barbara Wurtzel when she became a patient on the ATU. He reviewed and signed her discharge summary. Most of Dr. Nelson's time is spent supervising those people under his authority, particularly as to the care to be provided patients on the ATU.
"`A contract is an agreement between parties whereby one of them acquires a right to an act by the other; and the other assumes an obligation to perform that act. The obligation so assumed is called a promise. Contracts may be express or implied. These terms, however, do not denote different kinds of contracts, but have reference to the evidence by which the agreement between the parties is shown. If the agreement is shown by the direct words of the parties, spoken or written, the contract is said to be an express one. But if such agreement can only be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances, then the contract is an implied one.' Skelly v. Bristol Savings Bank, 63 Conn. 83, 87. 26A. 474 (1893); Hale v. Fred Benvenuti, Inc. 38 Conn. Su. 634, 638-39, 458 A.2d 694 (1983)." Boland v. Catalano, 202 Conn. 333, 336 (1987); See Behrstein [Bershtein], Behrstein [Bershtein] Behrstein [Bershtein] v. Nemeth, 221 Conn. 236 (1992). The plaintiff does not rely upon an express contract in its claims of law nor do the pleadings so allege. "An express contract is one in which the terms of the contract are expressed by the direct words of the parties . . . ." Burns v. Koellmer,11 Conn. App. 375, 388 (1987). In oral argument after the trial the defendants acknowledged that quantum meruit was involved under the pleadings and the evidence. "Quantum Meruit, . . . is the form of action which has been utilized when the benefit received was the work, labor or services of the party seeking restitution [citations omitted]". Burns v. Koellmer, supra 384. It has been said that where the notion of unjust enrichment is suggested that one of the "two distinct methods of recovery thereunder is a recovery based on a therapy of quasi-contract or quantum meruit." CBS Surgical Group Inc. v. Holt, 37 Conn. Sup. 555, 557 (App. Session 1981). It applies whenever justice requires compensation for a benefit conferred upon a defendant in situations where no express contract has been entered into by the parties. Burns v. Koellmer, supra 385, see 5 Willison, Contracts 3d 1970 ) 1479; Restatement, Restitution 40, 41, 107. Our law on quantum meruit has also been stated by our Supreme Court. See e.g. Rosetti v. New Britain, 163 Conn. 283 (1972); Anderson v. Zweigbaum, 150 Conn. 478 (1913); Rowell v. Ross, 87 Conn. 157
CT Page 9180 (1913).
The plaintiff's claim of the breach of an implied contract and/or quantum meruit is within the allegations of it revised complaint." A true implied contract can only exist where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words." Corriveau v. Jenkins Brothers, 144 Conn. 383, 387 (1957); Fischer v. Morrison,137 Conn. 399, 403 (1951)." The test is whether the acts and conduct of the parties show an agreement." Brighenti v. New Britain Shirt Corporation, 167 Conn. 403, 406 (1974).
 "`In distinction to an implied [in fact] contract, a quasi [or implied in law] contract is not a contract, but an obligation which the law creates out of the circumstances present, even though a party did not assume the obligation, and may not have intended but in fact actually dissented from it . . . . It is based on equitable principles to operate whenever justice requires compensation to be made.'" (Citations omitted; emphasis added). Brighenti v. New Britain Shirt Corporation, 167 Conn. 403, 407, 356 A.2d 181 (1974). "With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed to examine the circumstances the conduct of the parties and apply this standard." Cecio Bros., Inc. v. Greenwich, 156 Conn. 561, 564-65, 244 A.2d 404 (1968)."
Behrstein [Bershtein], Behrstein [Bershtein] Behrstein [Bershtein] v. Nemach, supra 242 (emphasis in original).
The facts set out above to which we add the following facts establish the liability of Barbara Wurtzel under the First Count. CT Page 9181 The plaintiff actually rendered medical services to Barbara upon which there is currently due $4,870.00. She had presented herself at the ATU of YNHH for voluntary psychiatric treatment. Shortly after her admission she signed, on August 15, 1987, a "Long Term Insurance Assignment Statement" explicitly authorizing and directing her insurance carrier ". . . to pay Yale University School of Medicine Office of Professional Services, any benefits due under any insurance plan . . . ." That assignment statement, clearly to the plaintiff, also stated that "I agree to pay [to the plaintiff] any remaining balance, or any expenses not covered under my insurance plan. I also authorize the release of any medical information necessary to process this claim. I further permit a copy of this authorization to be used in place of the original." Such a claim was filed, pursuant to this assignment, by the plaintiff with Barbara's insurance carrier under her husband Richard's policy and Blue Cross Blue Shield, the carrier involved, issued two checks directly to Richard in 1987. They were in the amount of $1,220.30 and $1,752.00.[3] The plaintiff has demanded payment of $4,780.00 from the Wurtzels of which these two checks represent a portion and no payment has been made. Certainly Barbara Wurtzel's argument that she did not know of the plaintiff and, therefore, it could not be expected to be paid for services it rendered to her cannot be accepted. On August 15, 1987 she admittedly signed this "Long Term Insurance Agreement statement", which contained the language referred to above, all of which was in print much longer than other printed portion of the "statement". Moreover, at the very top of this "statement" were printed the words "Yale University School of Medicine, Office of Professional Services, Faculty Practice Plan, P.O. Box 7309, New Haven, Connecticut 06519." Significantly, YNHH is not referred to at all anywhere on this assignment statement. The general rule is that where a person of mature years who can read and write signs a written contract affecting his or her pecuniary interests, notice of its contents is imputed to that person in the absence of hand, misrepresentation or mistake not due to the signer's negligence (none of which apply here). See Ursini v. Goldman, 118 Conn. 554, 562 (1934); Better Building Materials Co. v. Kirschner, 142 Conn. 1, 7 (1954); See 17A Am.Jur.2d contract 224; There is no fraud, misrepresentation or mistake here.
Mrs. Wurtzel's testimony that she never saw or spoke Dr. Nelson is not credited but his testimony that he did see and speak with her is credited. Although she said that there were days she did not see a doctor may be true, the nature of the ATU CT Page 9182 operation certainly demonstrated that other ATU staff such as a social worker and nurses saw and spoke to her on a number of occasions. She herself admitted that she saw Dr. Valla, an ATU resident, "a dozen times" during her hospital stay, that she saw Dr. Levinson, the chief resident on the ATU Team "half a dozen times" as well as admitting she "engaged in psychological and neurological testing." Her admitted participation in art, and family therapy groups while on the ATU has been referred to. She knew that she was an in-patient on the ATU for six weeks and accepted the services and benefits rendered to her by the ATU. Again she did this after she had signed the "Long Term Insurance Assignment Statement" discussed earlier.
Mr. Wurtzel said nobody ever mentioned the name of the Yale School of Medicine and that he did not know that a bill would come from them concerning Mrs. Wurtzel's hospital stay. Apparently the Yale OPS bill was rendered after Mrs. Wurtzel's discharge. He said that he did not agree to pay their bill at any time. However, during cross examination after his memory was "refreshed", Mr. Wurtzel testified without objection that he offered these two checks in payment of the plaintiff's bill. This offer of partial payment of the bill rendered was refused.
Here, as to the first count the plaintiff in fact conferred a valuable benefit, a measurable benefit upon Mrs. Wurtzel by the services rendered. Mrs. Wurtzel certainly accepted these services without any protest when she knew or reasonably should have known that they were not gratuitously rendered and that the provider reasonably had the expectation being compensated reasonably for them. It seems to us, in any event, that the actual intent of Mrs. Wurtzel in receiving the services is immaterial so long as a reasonable person in the same circumstances would have understood that a valuable benefit (which she sought) had been conferred and that the conferring party did so in reasonable expectation of payment. See Lewis v. Holy Spirit Assoc.'s for Unification, 589 F. Sup. 10, 13 (D. Mass. 1983). Given the voluntary nature of her entry to the ATU and her execution of the insurance assignment in favor not of YNHH but rather of the plaintiff the court cannot agree that she never knew of the plaintiff. Moreover, having executed this assignment, she could not reasonably assume that the plaintiff would never render services to her during her stay in the ATU. As noted, when Mr. Wurtzel "learned" of the plaintiff's bill and that the two checks from Blue Cross were for that bill, he himself agreed to pay that bill albeit only in the amount of CT Page 9183 those checks. Interestingly, when he did so, he said that the YNHH bill had been paid in full, "one hundred percent." There is no proof in this case that the plaintiff's bill of $4870 or any part of it was paid as part of the YNHH bill. It is concluded that the plaintiff has proven that it is entitled to recover against Barbara Wurtzel on the first count on the theory of quantum meruit.
Under all the circumstances shown by the credible evidence and the applicable law this court finds that the plaintiff is entitled to recover on the first count in quantum meruit, against the defendant Barbara Wurtzel.
The court finds that the $4,780.00 was reasonable for the services rendered her. This bill for services was incurred by the defendants in the treatment of Barbara Wurtzel. The bulk of this amount was the daily charge of $95.00 for each of the 41 days Barbara Wurtzel spent on the ATU unit which comes to $3510.00, a battery of some ten neurological and psychological tests given her at a charge of $650.00 and the initial consultation charge of $200.00 by Dr. Nelson. "Proof of the expenses paid or incurred affords some evidence of the value of the services, and if unreasonableness in amount does not appear from other evidence or through application of the trier's general knowledge of the subject matter, its reasonableness will be presumed." Carangelo v. Nutmeg Farms, Inc., 115 Conn. 457, 462
(1932); Flynn v. First National Bank Trust Co., 131 Conn. 430,436 (194). Our Supreme Court has said that "We have repeatedly held that `courts have a general knowledge of what would be reasonable compensation for services which are fairly stated and described.'" Piantedosi v. Floridia, 186 Conn. 275, 279 (1982). Unreasonableness does not appear on as to the face amount claimed for services and there was no evidence before the court from which unreasonableness appeared.
In addition, the court finds that the same evidence found above would also support such a judgment on the first count in favor of the plaintiff against the defendant Barbara Wurtzel on the grounds of quasi contract as the legal requisites for that doctrine are set out in such cases as Behrstein [Bershtein], Behrstein [Bershtein] Behrstein [Bershtein] v. Nemeth, supra and Brighenti v. New Britain Shirt Corporation, 167 Conn. 403, 407 (1974).
Turning to the second count, we have already set out the evidence necessary to pass upon this count. General statutes CT Page 918446b-37 expressly provides "(b) . . . it shall be the joint duty of each spouse to support his or her family, and both shall be liable for: (1) The reasonable and necessary services of a physician . . .; (2) hospital expenses rendered the husband or wife . . . ." See also Dzenatis v. Dzenstis, 200 Conn. 290, 307 (1986). States v. Edwards, 572 F. Sup. 1527, 1537 (D. Conn. 1983). As noted earlier Richard Wurtzel and Barbara Wurtzel are husband and wife. There is no claim that the services were not within the statutory purview as a "necessary." This court finds that they are. On the law and credible evidence the court finds the issues on the second count for the plaintiff against the defendant Richard Wurtzel.
Next, we examine the defendant's revised counterclaim. The evidence necessary for the disposition of this counterclaim has been set out above. In the first count the Wurtzels alleged that upon questioning Yale OPS about the $4,780.00 bill concerning Mrs. Wurtzel's stay in August and September 1987 they were sued and forced to retain counsel to defend. It is true that they had to retain counsel. It, however, has not been proven that "upon questioning" they were sued. This lawsuit began with service upon them in September 1988, just about a year after Mrs. Wurtzel was discharged and long after the plaintiff had billed them for services in fact rendered when their account on this matter had been unpaid for all that time. More to the point, this count claims a CUTPA violation contending that Yale OPS has brought this lawsuit for services it did not provide. As demonstrated by evidence set out earlier Yale OPS did provide the services. The Cheshire Mortgage case referred to by the Wurtzels is not applicable. The Wurtzels have not sustained their burden of proof on the first count of the revised counterclaim and, therefore, the issues there are found for Yale OPS.
The second count asserts a cause of action based on misrepresentation. Significantly, the Wurtzels' post-trial brief, fairly read, does not brief the misrepresentation claim at all. In any event, the allegations of this count have not proven. The elements of such a cause of action was just not proven, the defendants did not sustain their burden of proof on this count and the issues on it are found for Yale OPS.
The third count also alleges a CUTPA violation as outlined earlier. The Wurtzels have not sustained their burden of proof on this count upon which the issues are also found for Yale OPS.
CT Page 9185 On the revised counterclaim, judgment may enter in favor of Yale OPS, the defendant on this counterclaim, on each of the three counts.
On the matter of damages, having found in favor of the plaintiff Yale OPS against the defendants Barbara Wurtzel and Richard Wurtzel on the amended complaint as indicated above judgment may enter against both defendants on the amended complaint in the amount of $4870.00 to which sum is added $2345.60. This latter sum of $2345.60 is to be added to the sum of $4870.00 and represents interest at the rate of twelve percent per annum on $4,870.00 in accordance with General Statutes52-192a[4] in which sum $4,870.00) the plaintiff filed as an offer of judgment within eighteen months of the filing of the complaint which is in the file in this action. See Kusha v. Respondowski,3 Conn. App. 570 (1985). No award of attorneys fees is made by this court.
In sum judgment is entered on the amended complaint for the plaintiff against the defendants in the sum of $7,215.60.
Arthur H. Healey State Trial Referee