[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has applied, in the alternative, for a prejudgment attachment of the defendant's assets or for injunctive relief requiring the defendant to hold in escrow the fee earned from a personal injury case in which the defendant represented the plaintiffs after they discharged the plaintiff.
Both applications require a finding of probable cause that CT Page 6525-A the plaintiff will prevail on the merits of its claim. On the basis of a hearing at which the plaintiff presented evidence and the defendant chose not to call any witnesses, the court finds the facts to be as follows. The plaintiff professional corporation entered into an oral agreement in or around June, 1988, with Allen and Gail Chatt by which the plaintiff agreed to undertake representation of the Chatts in connection with a personal injury case which the Chatts sought to initiate to recover damages for serious injuries sustained by Mr. Chatt in a motor vehicle incident that occurred on June 3, 1988. The agreement was not memorialized in a written fee agreement. Alan Silver testified that the terms of the agreement were, as for all of the personal injury cases undertaken by his office at the time, that the law firm would take one-third of any recovery as its fee. This testimony was not rebutted.
Between June 1988 and approximately July 5, 1989, the plaintiff law firm assisted Mr. Chatt in finding medical specialists, collected the bills and reports of those specialists, interviewed Mr. and Mrs. Chatt, sought no-fault benefits from the Chatts' insurance provider and monitored a CT Page 6525-B criminal case brought against the tortfeasor, with an eye to trying to avoid adjudication of that person's conduct as intentional, an outcome that might make insurance coverage unavailable in the anticipated personal injury case.
By a letter dated July 5, 1989, Mrs. Chatt advised the plaintiff that she and her husband had decided to take their case to another lawyer, the defendant. At that point, the plaintiff had not filed suit on the Chatts' behalf.
By a letter dated July 10, 1989, Attorney Jacobs asked Attorney Silver to send him the file in the case, adding "[p]lease let me know what your thoughts are with respect to the amount of work that you have done on the file and the amount you feel you are entitled to in connection with that work."
Attorney Silver responded, in a letter dated August 3, 1989, that he would send Attorney Jacobs the Chatt files "once you have complied with Formal Opinion 31 of the Connecticut Bar Association, a copy of which I have enclosed along with Judge Schaller's decision." CT Page 6525-C
Attorney Silver did not set forth any amount to which he claimed to be entitled for the work he had performed before he was discharged by the Chatts.
Attorney Jacobs responded by stating that "I hereby comply with Connecticut Bar Association published Formal Opinion 31 as follows: Upon the conclusion of the Chatt matter, I will hold in my client's fund account the amount required under your contingency arrangement until its disposition has been determined by agreement or by litigation." Attorney Jacobs further represented that he would reimburse Attorney Silver for all out-of-pocket costs paid in the Chatt matter upon receipt of an itemization.
Upon receiving this letter, Attorney Silver sent Attorney Jacobs his file along with the bills Attorney Silver had Attorney Jacobs immediately reimbursed Attorney Silver for his disbursements.
On January 2, 1991, Attorney Silver wrote to Attorney Jacobs CT Page 6525-D stating that he had learned that the Chatt case had been resolved by settlement and further stating "I trust that you will comply with your letter of August 4, 1989, and hold the fee in escrow until the amount of my fee is resolved. You will be hearing from my attorney shortly."
Attorney Jacobs immediately wrote back to ask Attorney Silver to send him "a copy of any signed retainer agreement that you have from Allen and Gail Chatt." When the defendant learned that there was no signed retainer agreement between the plaintiff and the Chatts, he took the position that no funds need be escrowed and that the plaintiff was not entitled to any portion of the fee received. Attorney Jacobs stated that the fee received by him in connection with the Chatt case was $680,000. Because Mr. Silver had seen a much higher figure reported in the Connecticut Law Tribune, he made demand for $400,000. When he was advised that the fee was $680,000, he lowered his demand to $250,000. The defendant has paid the plaintiff nothing and has not placed in escrow any portion of the $680,000 fee.
The plaintiff engaged the services of an attorney, to whom CT Page 6525-E he represented that he had written 57 letters and had been involved in 185 telephone calls in the course of representing the Chatts for thirteen months, and that he had, additionally, spent ten hours reviewing the file and compiling lists of medical expenses and lost wages. He estimated, in a summary sent to his counsel, that his office had expended about 80 hours on the Chatt matter before he was discharged.
Because his office undertakes personal injury cases on a contingency fee basis, Attorney Silver kept no time records, and his estimates of time spent were based on his recollection and reconstruction of the efforts undertaken by review of the file.
Scrutiny of the entire file created during the plaintiff's representation of the charts reveals a standard, diligent attempt to assemble and send to the insurer for the party to be sued and/or the no-fault carrier evidence of physical injuries and expenses. The file does not reveal that any pleadings were drafted or that any but the most minimal research was engaged in as to Mr. Chatt's injury, which developed from generalized aches and pains to a diagnosis of sympathetic reflex dystrophy CT Page 6525-F disabling Mr. Chatt from performing his job at the Veteran's Administration Hospital and causing him great disability and distress.
Much of the work evidenced in the file was performed by clerical personnel who obtained medical reports and bills at the direction of Attorney Silver.
1. The application for a prejudgment attachment.
The plaintiff's application for an attachment requires a showing of probable cause of success on the merits of his substantive claims, which are alleged to be 1) breach of a contract to pay the plaintiff a portion of the fee earned as compensation for his services before the defendants assumed the representation off the Chatts; 2) an obligation in quantum meruit to pay for the services performed; 3) an obligation to pay for such services to avoid unjust enrichment; 4) misrepresentation; and 5) a violation of the Connecticut Unfair Trade Practices Act.
The Connecticut Supreme Court has stated that in determining CT Page 6525-G probable cause, the trial court must weigh the probabilities of success as to both legal and factual issues. Calfee v. Usman,224 Conn. 29, 37 (1992).
The defendant notes that since the plaintiff had no written fee agreement with the Chatts, the plaintiff would not have been able to enforce against them any obligation to pay a fee for services rendered, and that he therefore cannot enforce any obligation against the defendant. The plaintiff's suit is not, brought against the Chatts but against the defendant successor counsel, upon a claim that he agreed to pay the reasonable value of the plaintiff's services. The actual documents relied upon by the plaintiff as setting forth such an agreement do not in fact obligate the defendant to pay the plaintiff anything other than the out-of-pocket disbursements. In the letter of July 10, 1989, Attorney Jacobs asked for Attorney Silver's "thoughts . . . with regard to the amount of work that you have done on the file and the amount you feel you are entitled to in connection with that work." The letter contains no promise to pay. In his letter of August 4, 1989, the defendant expressly obligated himself to pay physicians' bills CT Page 6525-H and other case-related disbursements and out-of-pocket costs expended by Attorney Silver, however he made no promise to pay legal fees and agreed only to "hold in my clients' fund account the amount required under your contingency arrangement until its disposition has been determined by agreement or by litigation." There is no evidence of an agreement, either written or oral, by the defendant to pay anything to the plaintiff. Rather, the defendant's position in response to Attorney Silver's demands, which never identified an amount sought, was that the disposition of the funds would be determined in the future.
The court does not agree that the plaintiff is likely to succeed on the merits of his claim that Formal Opinion 31 of the Connecticut Bar Association creates an enforceable duty of the defendant to pay him a fee at this time. That opinion indicates that the Rules of Professional Conduct require an attorney taking over representation from another attorney either to agree in writing to a method of disposition of the ultimate fee or to agree to escrow the amount required under the discharged lawyer's contingency fee arrangement until its disposition has been resolved by agreement, voluntary fee disputes arbitration CT Page 6525-I proceedings, or a court.
Neither Formal Opinion 31 nor the underlying provisions of the ethics code required the defendant to agree to pay a particular amount, not do they create a contractual obligation of the successor attorney to pay the discharged attorney prior to the outcome of a proceeding to determine an amount due. The only obligation is to hold aside funds sufficient to satisfy any enforceable obligation by the clients to pay the discharged lawyer for the value of his services.
While courts will intervene to avoid an impasse over the transfer of a file, requiring relinquishment when either one of the procedures set forth in Formal Opinion 31 is completed, see Kopjanski v. Maratea, Docket No. 24688 (J.D. New Haven, Feb. 10, 1987), Formal Opinion 31 does not create an obligation by the successor lawyer to pay the discharged lawyer until a determination of the amount due has been adjudicated. Any contractual obligation assumed by the defendant has not yet ripened into an obligation to make payment, and no prejudgment remedy can be based on a claim for payment where entitlement to payment has not CT Page 6525-J yet accrued. In other contexts, the Connecticut Supreme Court has indicated that breach of a provision of the Code of Professional Responsibility does not create a cause of action. Mozzochi v. Beck, 204 Conn. 490, 500-501 (1987).
The alternative basis for the plaintiff's application for a prejudgment attachment is its claim of quantum meruit/unjust enrichment, that is, the actual equitable proceeding to determine the amount, if any, to which the plaintiff is entitled for his efforts before being discharged.
The defendant has filed a special defense that no recovery can be allowed to the plaintiff in quantum meruit or upon any other equitable ground of recovery because the plaintiff failed to comply with 52-251c C.G.S. That statute, titled "Limitation on attorney contingency fees in personal injury, wrongful death and property damage actions" provides, in relevant part, that
 a) In any claim or civil action to recover damages resulting from personal injury . . . occurring on or after October CT Page 6525-K 1, 1987, the attorney and client may provide by contract, which contract, shall comply with all applicable provisions of the rules of professional conduct governing attorneys adopted by the judges of the superior court, that the fee for the attorney shall be paid contingent upon, and as a percentage of: (1) damages awarded and received by the claimant; or (2) settlement amount pursuant to a settlement agreement. [emphasis supplied]
Rule 1.5(c) of the Rules of Professional Conduct provides that "a contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages of recovery that shall accrue to the lawyer as a fee in the event of settlement, trial or appeal, whether litigation and other expenses are to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated." CT Page 6525-L
The defendant claims that the failure of the plaintiff to furnish the Chatts with a written fee agreement renders the oral agreement unenforceable against them. The defendant cites no precedent specifically imposing unenforceability in either contract or quantum meruit as a penalty for failure to comply with this ethical requirement or with 52-251c C.G.S. That statute, unlike the Home Improvement Act, 20-429 C.G.S., does not specifically provide that failure to reduce the agreement with the client to writing shall render it unenforceable, hence the defendant's reliance on Barrett Builders v. Miller, 215 Conn. 316
(1990) is misplaced.
The Connecticut Supreme Court in Bernstein, Bernstein 
Bernstein v. Nemeth, 221 Conn. 236 (1992), did not adopt the rule favored by the defendant here. In that case, the plaintiff law firm refused to give a successor lawyer the client's file but then claimed that the successor lawyer was liable in quantum meruit for services performed before the law firm was discharged. The ruling is devoid of any indication whether the discharged law firm had a written contract with the client, and quantum meruit CT Page 6525-M was dented only because the Court found that the discharged firm, by failing to give up the file, had not acted equitably and could not recover in equity. Bernstein, 221 Conn. at 243.
While failure to provide a client with a written contingency fee agreement may give rise to a grievance for violation of the lawyer's ethical obligations, this court does not find that the defendant, is likely to succeed on its defense that the failure to comply renders unenforceable a lawyer's claim for the value of services rendered in a file turned over to successor counsel.
In Cole v. Myers, 128 Conn. 223 (1941), The Supreme Court ruled that a discharged attorney is entitled to receive "reasonable compensation" for the work he has done up to the point of discharge. Other courts that have considered the issue have determined that reasonable compensation in quantum meruit is to be determined by such factors as the time expended, billing rate, the lawyer's skill and standing, and the extent to which his/her efforts advanced the ultimate success of the case. See, e.g. Johns v. Klecan, 556 N.E.2d 689, 696 (Ill.App. 1990). It is also appropriate to take into account those factors enumerated CT Page 6525-N in Rule 1.5 of the Rules of Professional Conduct.
On the basis of the evidence of the plaintiff's efforts, described above, the court finds that it is probable that the plaintiff will recover in quantum meruit the sum of $3,750.00. The work performed by the plaintiff was of an extremely routine sort, most of it consisting of accumulation of bills and medical reports and preliminary conversations with the clients. The evidence adduced did not reveal that the plaintiff formulated any legal theory or strategy of presentation that led to the ultimate settlement of the case, and the court has arrived at the figure indicated by concluding that approximately thirty hours were spent on activities requiring skills justifiably billed at the rate of $125.00 per hour, a rate that recognizes that some of the work was performed by an attorney and some by clerical personnel. The court further finds that the defendant would have been likely to expend that amount in salary for his own employees to perform the preliminary preparation supplied by the plaintiff.
The court finds that the plaintiff has established probable cause that he will recover in quantum meruit to the extent of CT Page 6525-O $3,750.00. Allowing for his additional likely recovery of court costs, the court authorizes him to attach the defendant's property to the value of $4,000.00. The court does not find it probable that the plaintiff will establish that he has suffered an ascertainable loss with regard to the defendant's failure to escrow funds, the conduct alleged to be an unfair trade practice, hence, no additional amount is allowed as to any likely recovery under CUTPA. Probable cause was not established as to any damages resulting from misrepresentation.
2. Claim for injunctive relief
The plaintiff further seeks a temporary injunction requiring the defendant to put in escrow the sum of $250,000.00. Since the court does not consider it probable that the plaintiff will demonstrate that the defendant's failure to put that amount in escrow causes him any irreparable injury not remedied by the legal remedy of money damages to compensate him for his early efforts on behalf of the Chatts, injunctive relief is denied. See Griffin Hospital v. Commission on Hospital and Health Care,196 Conn. 451, 457 (1981), citing Olcott v. Pendleton, 128 Conn. 292, CT Page 6525-P 295 (1941).
Conclusion
The plaintiff has established probable cause as to its claim for recovery in quantum meruit, and it is authorized to attach the defendant's property to the value of $4,000.00.
Injunctive relief is denied.
Beverly J. Hodgson Judge of the Superior Court