[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is an attorney who practices alone in the Town of Haddam. Her specialty lies in the fields of taxation and estate planning.
The defendant Edward Stites, a 95 year old longtime resident of Higganum, contacted the plaintiff in September 1991. The plaintiff, who had not represented Mr. Stites or his wife, a co-defendant, in the past was asked by Mr. Stites to review their wills, including a codicil. The wills were executed about six or seven years prior to Mr. Stites' contact with the plaintiff, and his concern was with any impact changes in the law during the period might have had on the wills and their terms and conditions. In short, as the defendant Stites testified, he wanted the wills "examined for accuracy".
The court attaches credibility to the defendant's testimony that at no time did he request the plaintiff to perform any financial analysis of his estate or to provide any services which would fall within the definition of estate planning. On the contrary, Mr. Stites requested Attorney Slade to "keep it simple". CT Page 7314
The plaintiff, at her initial meeting with the defendant, did not describe the services which she expected to perform or indicate to him her estimated fee.[1]
Notwithstanding his attitude as described above, Mr. Stites, at the plaintiff's request, delivered to her not only the existing wills but other documents, including a complete listing of the assets of his estate and that of his wife.[2] The aggregate value thereof was approximately $750,000.
During the next several weeks Attorney Slade spent a large number of hours in analyzing the defendants' estates, in research, and in the preparation of marital deductions trusts to be incorporated in revised wills, including living wills, which she prepared for the Stites' execution.
On December 13 the defendants executed the wills at the plaintiff's office. At that time she informed them that she would be forwarding her bill for services, the amount of which would be computed at an hourly rate of $100. The defendants did not object then, or have they objected since, to the rate charged.
The plaintiff's bill for services, including costs, is in the amount of $3,224.99. Of that amount $2,415 is described as attributable to "Financial analysis: Securities 
cash" and "Estate planning" (Pl. Exh. A). The defendants promptly paid $800 plus costs of $9.99. The amount paid is that which the bill reflects as applicable to preparation of the wills and living wills. The defendants have at all times refused to pay the $2,415 balance which the plaintiff claims is due and owing.
The complaint sounds in two counts. The first count alleges a breach of contract, while the second count, although incorporating the contract allegations of the first count, is intended to be based on a quantum meruit theory of recovery.[3]
The court finds, as to the first count, that there was no express contract which authorized the plaintiff to furnish to the defendants the disputed services or any express agreement to compensate her for those services.
There being no express contract, the court is faced with the question whether on the facts an implied contract CT Page 7315 exists:
 "A true implied [in fact] contract can only exist where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words. Such a contract arises where a plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefor, and the defendant, knowing such circumstances, avails himself of the benefit of those services. In such a case, the law implies from the circumstances a promise by the defendant to pay the plaintiff what those services are reasonably worth. Collins v. Lewis, 111 Conn. 299, 304, 149 A. 668 (1930)." Bershtein, Bershtein 
Bershtein v. Nemeth, 221 Conn. 236, 241-42 (1992).
Although Attorney Slade rendered services which were not requested for which the expected to be paid, there is no credible evidence that the defendants were aware, or, in the face of Mr. Stites' limited request, should have been aware, of such circumstances. The fact of the plaintiff's analysis, research, and estate planning services did not become known to the defendants until after the fact, i.e., when Attorney Slade submitted her itemized bill for services. The court finds that no implied in fact contract existed between the parties.
That the plaintiff is unable to recover on theories of express or implied contract does not settle the issue. A quasi-contract, while not a contract at all, arises from "an obligation which the law creates out of circumstances present, even though a party did not assume the obligation, and may not have intended but in fact actually dissented from it. . . It is based on equitable principles to operate whenever justice requires compensation to be made." Brighenti v. New Britain Shirt corporation, 167 Conn. 403, 407 (1974). It is the court's finding that a, quasi-contractual obligation exists upon the defendants to pay a portion of the balance of the plaintiff's fee for services
The principal circumstance which gives rise to the CT Page 7316 obligation imposed by law is the plaintiff's professional judgment that the defendants, by virtue of the size of their estates, needed the benefit of the marital deduction trust to reduce the impact of inheritance taxes on their estates. The plaintiff, after determining the amount of assets and the ownership interests of the parties, drafted and incorporated such trust language in the revised wills. The protection in terms of limiting the death tax consequence to the defendants was not present in their prior wills, and the potential benefit to them by such inclusion in the revised wills prepared by the plaintiff is substantial. Examination of the circumstances and the conduct of the parties persuades the court that, on the basis of equitable principles, "justice requires compensation to be made." Bershtein Bershtein Bershtein v. Nemeth, supra 242.
The plaintiff testified that sixteen hours of the forty hours of service to the defendants was devoted to the draft of documents, presumably the wills and living wills. Even accepting such testimony, the court finds no basis for more than a few hours of time spent to determine the size and status of the defendants' estates, which information could have been obtained on the basis of a few simple questions to Mr. Stites. Likewise, there seems no reason why Attorney Slade, who holds herself out as an estate planning specialist, should have required extensive research. Again, a few hours research at most should have sufficed preliminary to actual drafting of the wills. In short, in its application of equitable principles the court will not hold the defendants liable for twenty-four hours of analysis and research services.
The court finds that five hours should have been ample time to gather the required information and complete any necessary research. In, reaching such conclusion the court is permitted to use its own judgment since it is generally accepted that "[c]ourts have a general knowledge of what would be a reasonable attorney's fee for services which are failry [fairly] stated and described." Appliances, Inc. v. Yost, 186 Conn. 673,680 (1982). The court applies the plaintiff's hourly rate to which the defendants, as previously stated, raised no objection.
Judgment may enter for the plaintiff to recover of the defendants $500 plus costs. CT Page 7317
GAFFNEY, J.