[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case the plaintiff, Durant, Nichols, Houston, Mitchell and Sheehan, a practicing law firm in the City of Bridgeport, Connecticut, makes claim for unpaid legal fees against Richard J. Warren, Wilton, Connecticut. This case arises out of a previous case in which one, Joo, sued the defendant, Warren and a corporation, Capitol Switch Inc. for age discrimination. At the time, Warren was a shareholder and also a director and president of Capitol Switch Inc. The plaintiff was retained, represented both Warren and Capitol Switch during the Joo trial, and claims that it was entitled to legal fees from both Warren and the corporation for its service on behalf of both.
The trial ended in a large verdict against Capitol Switch, Inc. and a defendant's verdict in favor of Warren. Capitol Switch, Inc. went bankrupt and in this case, the plaintiff seeks to collect legal fees from Warren, who has denied ever agreeing to pay such fees claiming that the plaintiff agreed to payment of legal fees by the corporate entity for a defense of both the corporation and Warren individually in the Joo action.
The plaintiff's amended complaint is in three counts.
Count I
The first count alleges that in December 1995 the defendant Warren entered into an agreement with the plaintiff, wherein the plaintiff would provide legal services in the aforementioned Joo action, in defense of Capitol Switch Inc. and Warren individually who at the time was president of the corporation.
The evidence does not substantiate that there was a written agreement with respect to the defense of Warren, individually. Exhibit B, which is the initial writing respecting any proposal for the defense of the Joo matter by the plaintiff, is a letter from the plaintiff, addressed to Richard J. Warren, President, Capitol Switch, Inc. outlining the basis for any legal charges in the defense of the action. Exhibit B goes on to ask for a retainer and, significantly, adds "this should not be taken as being an estimate of the costs and fees for representing Capitol CT Page 2279 Switch, Inc. through a conclusion of the litigation.
Exhibit B was approved and accepted by Richard J. Warren in in his corporate capacity as president. Nowhere is there any indication in Exhibit B. that this exhibit reflected an agreement that Warren was to pay for a defense of the Joo action personally.
The court's conclusion with respect to count I is further borne out by Exhibit I, an attempt by the plaintiff to persuade the defendant to personally obligate himself to an amendment to the original fee schedule reflected in Exhibit B. This Warren refused to sign.
COUNT II
The second count is based on the theory of Quantum Meruit.
"Quantum Meruit is the remedy available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered. . . . Such contracts are determined from evidence of the parties' course of conduct which implies a promise to pay for the services rendered. The pleadings must allege facts to support the theory that the defendant, by knowingly accepting the services of the plaintiff and representing to her that she would be compensated in the future, impliedly promised to pay her for the services she rendered." (Citations omitted.) Burns v.Koellmer, supra, 11 Conn. App. 383-84. An implied contract "is one which is inferred from the conduct of the parties though not expressed in words. Such a contract arises where a plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefore, and the defendant, knowing such circumstances, avails himself of the benefit of those services. In such a case, the law implies from the circumstances, an promise by the defendant to pay the plaintiff what those services are reasonably worth." (Internal quotation marks omitted.) Bershtein, Bershtein Bershtein,P.C. v. Nemeth, 221 Conn. 236, 241-42, 603 A.2d 389 (1992).
Quantum Meruit, however, is available "where no express contract has been entered into by the parties." Burns v.Koellmer, supra, 11 Conn. App. 385. "Quantum Meruit is based upon an implied contract and such can only exist where there is CT Page 2280 no express one." Collins v. Lewis, 111 Conn. 299, 304,149 A. 668 (1930). See also Bershtein, Bershtein Bershtein v.Nemeth, supra, 221 Conn. 241. "[P]arties who have entered into controlling express contracts are bound by such contracts to the exclusion of inconsistent implied contract obligations." Rosickv. Equipment Maintenance Service, Inc., 33 Conn. App. 25, 37,632 A.2d 1134 (1993). In general, a party to an express contract cannot assert a claim for quantum meruit or unjust enrichment for work covered by the contract." Shay v.Gallagher, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 302341 (January 23, 1995, Levin, J.).
In this case, there was an express contract as exhibited by Exhibit B, and subsequently enforced by the plaintiff's attempt under Exhibit I. No implied contract that either the plaintiff expected to be paid by Warren in his individual capacity or that Warren impliedly promised to personally pay for the services rendered, can be inferred. All the evidence points otherwise. All invoices regarding the Joo action were addressed solely to Capitol Switch Inc. All payments made to the plaintiff were made on corporate checks of Capitol Switch. Prior to the institution of this action, the court can find no evidence from the parties' course of conduct which would enable the court to grant the claimed relief under Quantum Meruit.
COUNT III
The third count claims relief under the theory of Alter Ego. When it appears that a corporation is a mere instrumentality or individual owing all or most of its stock and that the corporate entity has been dominated and controlled by such individual, counts may disregard the fiction of a separate legal entity and pierce the shield of immunity afforded by the corporate structure. Desantis v. Piccadilly Land Corporation,3 Conn. App. 310, 314.
The evidence disclosed that Warren first became involved with Capitol Switch when he bought in, in 1982, at which time he was not the only shareholder. Under cross-examination he testified that he either owned all the stocks or had an agreement to purchase same. His testimony was that at the start of the Joo trial he was not the sole shareholder although he served as president, director and employee.
The third count, in substance, alleges that at the CT Page 2281 commencement of the plaintiff firm's representation of the defendant, he exercised total domination and control over the corporate entity, that he alone had complete control of the finances assets and operations of the corporation and, further, intermingled his own finances with that of the corporation. The third count further alleges that the defendant controlled the affairs of the corporation for his own personal benefit, and that the defendant and corporation were one and the same. The third count further alleges that although all payments for services were made to the plaintiff by checks drawn on the corporate account, the defendant withheld from the plaintiff the knowledge that all payments made through the corporate account were in fact made with personal funds of the defendant which had been funneled through the corporate account so that the corporation would appear to be solvent. The third count further alleges that such actions were meant to fraudulently mislead the plaintiff into believing the corporation was solvent and capable of paying the expense of the Joo litigation and was fraudulently designed to induce the plaintiff to perform legal services on behalf of the defendant personally, the plaintiff being led to believe that the corporation would be able to handle such payments.
The plaintiff had the burden of proving the allegations of the third count by "clear and satisfactory evidence" DeSantis v.Piccadilly Land Corporation, 3 Conn. App. 310, 313. The Alter Ego or instrumentality, rule requires proof of three elements:
(1) Control, no mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own;(2) that such control must have been used by the defendant to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or, a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." Saphir v. N. Eustadt,177 Conn. 191, 210; Zaist v. Olston, 154 Conn. 563, 575.
The court is unable to find that the plaintiff has sustained its burden of proof by "clear and satisfactory evidence." Our Supreme Court has expressly stated that "we do not wish to be understood to countenance — the imposition of CT Page 2282 the legitimate indebtedness of a corporation upon a majority stockholder in derogation of his legal immunity merely because of the corporate control inherent in his stock ownership. "Saphir v. N. Eustadt, supra at pg 212; Zaist v. Olson, supra at pg. 577.
The plaintiff has proved little more than that the defendant was a majority shareholder in the corporation, and, perhaps had a contract to purchase additional or all the remaining shares. The court is unable to find "clear and satisfactory evidence" that the defendant used his position to commit fraud or wrong, or commit a dishonest or unjust act in contravention of plaintiff's legal rights or that the defendant's position in the corporation proximately caused any injury or loss to the plaintiff.
The defendant did not form Capitol Switch, Inc. It was formed in 1947 and the defendant bought in in 1982. The company continued to conduct its regular business, that of manufacturing and delivering electric switches, even after the institution of the Joo trial and the subsequent written fee agreement between the plaintiff and Capitol Switch, Inc., December 1995. The third count complains that the defendant funneled personal funds into the corporate account in order to mislead the plaintiff into believing the corporate entity was solvent and would be able to pay the plaintiff's legal fees. There is no credible evidence of this other than the bald allegation. Exhibit E explains that funds advanced by the defendant were loans to enable the corporation to continue to operate its regular business and that these loans become necessary because of the expense of the Joo trial. The plaintiff chose solely to deal with the corporate entity and was paid by such over a period of time. As was stated by Justice Cotter in his dissenting opinion in the Zaist case, supra at pg. 581, the record in this case "does not justify overriding the principle of a shareholder's limited liability", because of Capitol Switches' unfortunate financial predicament caused by the Joo action.
Judgment may enter in favor of the defendant, Richard Warren, on all three counts, together with costs.
MILTON H. BELINKIE JUDGE TRIAL REFEREE CT Page 2283